HANNEVIG et al. v. R. W. J. SUTHERLAND & CO. *

(Circuit Court of Appeals, Second Circuit. January 15, 1919.)

No. 155.

1. ARBITRATION AND AWARD ⊜57—AWARD—GROUNDS FOR VACATION.
An award of arbitrators cannot be set aside because of the failure to determine a question submitted to them by the agreement for arbitration, but upon which no evidence was presented.

2. ARBITRATION AND AWARD ⊜60—SUFFICIENCY OF AWARD—CERTAINTY.
An award of arbitrators that is sufficiently certain to be obligatory as a contract is valid.
Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Christopher Hannevig and Vidkunn Johnsen, copartners as Hannevig & Johnsen, against R. W. J. Sutherland & Co. Decree for respondent, and libelants appeal. Affirmed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 249 U. S. —, 39 Sup. Ct. 386, 63 L. Ed. —.

Bullowa & Bullowa, of New York City (Ferdinand E. M. Bullowa and Emilie M. Bullowa, both of New York City, of counsel), for appellants.

Harrington, Bigham & Englar, of New York City (Dix W. Noel, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Appellants sought to recover in their libel filed September 12, 1916, $61,750 for two months hire of the steamship Asahi Maru, paid to the appellee under the terms of the charter party, for one reasonably direct voyage of said vessel from the United States to the Far East; that the voyage was interfered with because the appellee did not deliver the vessel to the appellants on August 18, 1916, when they were obliged to do so. A cross-libel was filed, asking $50,000, claimed to be due from the appellants for the balance of hire of the said vessel under the charter party, and this in addition to the $61,750 paid in advance for the first two months and for the return of which the first libel was filed. To this appellants filed their answer, and claimed a loss of $100,000, as damages which they sustained because of the alleged prevented use of the vessel. On November 25, 1916, when the answer to the cross-libel was filed, the voyage which the vessel was making had not been completed. After issues were joined on the libel and cross-libel, the parties entered into a stipulation for the submission to a board of arbitrators of all matters in controversy between them, arising in connection with said vessel, whose findings should be conclusive of the issues in the said suits, and that a decree or judgment might be entered in said causes in accordance with the award. The questions presented to the board of arbitrators were as follows:

(1) Were appellants liable for charter hire under a charter party dated March 22, 1916, and what amount of charter hire, if any, remained due.

(2) Whether appellants were entitled to disaffirm this charter party and recover back a payment on account of charter hire amounting to $61,750 by reason of the failure to deliver the vessel.

(3) Whether appellants were entitled to damage by reason of the failure to deliver.

(4) Whether there was any liability for detention of cargo by owners of the steamship under claim of lien.

Under the stipulation, each party selected an arbitrator and the two selected a third. The board of arbitrators made their award on October 22, 1918, finding that appellants were liable for charter hire from March 22, 1916, until the date the steamer was redelivered, at the rate stipulated in the charter party, to wit, £6,500 per calendar month, but did not determine the date of redelivery, and that appellants were not entitled to recover damages by reason of the failure to deliver, or because of detention of cargo by owners of the steamship under a claim of lien.

Upon these findings, on motion, a final decree was granted dismissing the libel of appellants upon the merits and an interlocutory decree

upon the cross-libel of appellee, decreeing that the latter was entitled to recover from appellants the charter hire at the rate of £6,500 per calendar month, from August 23, 1918, to the date of redelivery of the vessel. This authority to enter a decree was granted by the terms of the stipulation. The decree is now challenged by the claim of the appellants that the award was not a final decision on all matters in controversy between the parties arising in connection with the steamship. The stipulation provided for submission to the board of arbitrators of a full statement of their claims and demands. Paragraph 5 of the stipulation provided:

"In consideration of the said payment of hire to be made the said R. W. J. Sutherland as aforesaid, and transfer and assignment of the sum of thirty thousand ($30,000) dollars heretofore deposited with the National Surety Company, as hereinbefore provided, the said R. W. Sutherland undertakes and agrees to procure the release of the cargo recently discharged from the said steamship Asahi Maru at Yokohama, and now held by the owners of the said steamship under a claim of lien for hire, and cause said lien to be released, the question of liability by reason of said lien, as between the parties hereto, to be one of the questions submitted to the arbitrators herein."

The decree is further challenged because the date of the redelivery of the ship was not determined by the arbitrators in their award.

The District Judge dismissed the libel of appellants and vacated the attachment, sending the subject of cross-libel to a reference to determine the question of the date of redelivery of the vessel. The appellants cannot be heard to complain of the practice in thus disposing of the cross-libel by an interlocutory decree, for it is not made the subject of any of the assignments of error.

Under the provisions of the stipulation for arbitration:

"Both parties were obligated to submit to the arbitrators, a full statement of his or their claims and demands, together with such documents and proofs in support thereof as he or they may deem necessary or advisable."

The date of redelivery of the vessel, and therefore the exact amount of hire to be paid, was not formally raised at the arbitration, for the reason that the voyage had not been completed at the time the cross-libel was filed.

[1] The board of arbitrators substantially disposed of all the issues presented upon the pleadings in the two admiralty cases in deciding that the appellants were not entitled to a return of the advance hire, or to any other damages for the alleged breach of charter party, and that they were liable for hire at the rate specified in the charter from August 23, 1917, until the date of redelivery to her owners in Japan. Nor can the award be attacked as incomplete because it failed to determine the question of liability by reason of the lien upon cargo for charter hire, asserted by the Japanese owners at Yokohama. An examination of the proceedings before the board of arbitrators fails to disclose any pecuniary damage resulting to appellants from the cargo seizure at Yokohama or to set forth any grounds upon which the board of arbitrators might determine the question of liability therefor. No proof seems to have been brought before the board of arbitrators in connection with this claim. Therefore, the question not having been actually presented to the board of arbitrators, their failure

to make any findings with respect to this item cannot now be urged as a ground for setting aside the award.

Judge Spencer, in Jackson, etc., v. Ambler, 14 Johns. (N. Y.) 96, at page 106, said:

"I admit the law to be 'that the award must comprehend everything submitted, and must not be of parcel only.' Under this rule Kyd (172) observes (and he is supported by the cases he refers to) that it must be understood with a considerable degree of limitation; for, though the words of the submission be more comprehensive than those of the award, yet, if it do not appear that anything else was in dispute between the parties beside what is comprehended in the award, the award will be good; as if the submission be of all actions, real and personal, and the award be only of actions personal, it shall be presumed that no actions real were depending between the parties."

If the submission is general, and the adjudication applies in terms to a particular matter, the award purporting to be made of and concerning the matter submitted will be presumed to be good until it is shown that there were other matters presented to the arbitrators which they neglected or refused to decide. Case v. Ferris, 2 Hill (N. Y.) 75, 76.

We deem it sufficient answer to the claim that the award is not final for leaving this particular question undecided, in saying that the question was never brought before the board of arbitrators at all.

The English rule was adopted by the Supreme Court in Karthaus v. Ferrer, 26 U. S. (1 Pet.) 222, 7 L. Ed. 121, where it was said (page 227):

"That there is a class of cases in the books, in which arbitrators have been held to a more than ordinary strictness in pursuing the terms of the submission, and in awarding upon the several distinct matters submitted, upon the ground of the submission being conditional, ita quod, is conceded. The case of Randall v. Randall is a leading case of that class. Lord Ellenborough, C. J., in delivering the opinion of the court, says: 'The arbitrators had three things submitted to them; one was to determine all actions, etc., between the parties; another was to settle what was to be paid by the defendant for hops, poles, and potatoes, in certain lands; the third was to ascertain what rent was paid by the plaintiff, to the defendant, for certain other lands. The authority given to the arbitrators was conditional, ita quod, they should arbitrate upon these matters, by a certain day. The arbitrators have stopped short, and have omitted to settle one of the subjects of difference stipulated for.'

"This case was adjudged according to the rule laid down in the books: That if the submission be conditional, so as the arbitrator decide of and concerning the premises, he must adjudicate upon each distinct matter in dispute, which he has noticed. Kyd, 177.

"But the rule is to be understood with this qualification: That in order to impeach an award, made in pursuance of a conditional submission, on the ground only of part of the matters in controversy having been decided, the party must distinctly show that there were other points in difference, of which express notice was given to the arbitrator, and that he neglected to determine them."

The rule in New York state was laid down in New York Lumber Co. v. Schnieder, 119 N. Y. 475, 481, 24 N. E. 4, 5, where it was said:

"In the absence of some positive proof of neglect or refusal by the arbitrators to decide any of the particular matters presented under the submission, the presumption holds good that their award covers all of the submission. Ott v. Schroeppel, 5 N. Y. 482. The parties certainly were bound, under their general submission, to claim before the arbitrators all the demands

coming within the scope of the submission, and in this case the absence of negative proof forbids our disregarding the legal presumption that every such demand was laid before them.

"I think a party is bound, by the very spirit and letter of a general submission, to submit every demand he has arising out of the transaction, or contract, and, if he fails to do so, he should not be heard to complain, in the face of a general award, that there were matters omitted to be passed upon. I think the rule should be a settled one that the submission by parties of all matters in dispute, growing out of a particular transaction, or contract, will estop them from thereafter claiming that the award is not conclusive, if its language and terms, when fairly regarded, are comprehensive. The presumption should be strongly upheld by the courts that the arbitrator's decision was a final adjustment of all matters in controversy."

The mere filing of the claim by the appellants, asserting that part of their claim is based "upon this lien on cargo in Japan," in the absence of any proofs submitted to substantiate anything in regard to it, is not such a submission as to permit the arbitrators to intelligently pass upon the claim; for nothing was placed before them which could result in anything except the final dismissal of any claim against appellants arising from a detention of the cargo. If, later, it should be found that appellants have such a claim, it leaves them free to litigate it.

[2] We think the award of the board of arbitrators is sufficiently final notwithstanding their failure to ascertain in dollars and cents, the exact amount for hire due from the appellants under this award. An award that is sufficiently certain to be obligatory as a contract is valid. Perkins v. Giles, 50 N. Y. 228, 236.

Here the arbitrators agreed upon the liability for charter hire, fixing it at £6,500 a month until the date the steamship was delivered to her owners in Japan. This is a matter which the appellants should know, and, once ascertained, makes it easy of calculation in exact amount. The failure to make exact calculations as to this does not invalidate the award. Parker v. Dorsey, 68 N. H. 181, 38 Atl. 785; Burkholder v. McFerran, 3 Serg. & R. (Pa.) 421.

The further objection, founded upon the alleged disqualification of Mr. Amaral and the charges that the arbitrators were partial and unfair in the conduct of the proceeding, are frivolous. They have been sufficiently answered by the affidavits presented in behalf of the respondent, and we do not consider that they require further comment in this opinion.

Decree affirmed.

WARD, Circuit Judge, dissents.