## RED CROSS LINE v. ATLANTIC FRUIT COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 112.   Argued November 14, 15, 1923.—Decided February 18, 1924.

1. A decision of the highest court of a State excluding maritime contracts from the operation of a state statute, not as a matter of statutory construction but due to its opinion that the Federal Constitution so requires, presents a constitutional question reviewable here.   P. 120.
2. Under the provision of the Judicial Code (§ 24, par. 3) vesting the District Courts with exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction but saving to suitors the right of a common law remedy, a State may confer upon its courts jurisdiction to specifically perform an agreement for arbitration valid by the general maritime law and by the law of the State, which is contained in a charter-party made in the State and which, by its terms, is to be performed there.   P. 122.

233 N. Y. 373, reversed.

CERTIORARI to a judgment of the Supreme Court of New York entered on a judgment of the New York Court of Appeals reversing a judgment of the Appellate Division of the Supreme Court, which had affirmed an order of the Supreme Court, in New York County, by which the present respondent was directed to proceed to arbitration under its contract contained in a charter-party, executed in New York, whereby a vessel was chartered to the petitioner by the respondent.

*Mr. Homer L. Loomis,* with whom *Mr. Reginald B. Williams* was on the briefs, for petitioner.

The agreement to arbitrate alone is the subject of the statute, which prescribes the procedure, *Berkovitz* v. *Arbib & Houlberg, Inc.,* 230 N. Y. 261, and is intended to compel specific performance of such agreements. *Matter of Division 132,* 196 App. Div. 206.

The courts have never denied that an agreement to arbitrate creates a right, though public policy was thought to forbid specific performance. *Hamilton* v. *Home Ins. Co.,* 137 U. S. 370.

The application of the statutory remedy to the independent contract to arbitrate incorporated in a charter-party does not infringe the jurisdiction of the admiralty court; at least not unless this independent contract is maritime and subject to the admiralty jurisdiction.

The agreement to arbitrate is not a maritime agreement and is not within the jurisdiction of the admiralty court. The essential requisite of a contract to bring it within the admiralty jurisdiction and the true criterion for its determination is an undertaking for the performance of maritime services. *North Pacific S. S. Co.* v. *Hall Bros. Co.,* 249 U. S. 119; *People's Ferry Co.* v. *Beers,* 20 How. 393; *New Jersey Nav. Co.* v. *Merchants Bank,* 6 How. 344; *The Perseverance,* Blatchf. & H. 385; *Pacific Surety Co.* v. *Leatham Co.,* 151 Fed. 440; 1 Am. & Eng. Encyc. Law, 660.

The fact that the arbitration agreement is included in a charter-party does not alter the nature of the act or acts agreed to be done. A charter-party, while it is characterized generally as a maritime contract, is to speak more accurately a series of agreements, some of which very often have no relation to a maritime service and are unenforceable in an admiralty court. The agreement to arbitrate is obviously entirely independent of and unrelated to the other covenants in the charter-party. *Brown* v. *West Hartlepool Nav. Co.,* 112 Fed. 1018; *Richard* v. *Holman,* 123 Fed. 734; *Richard* v. *Hogarth,* 94 Fed. 684; *Taylor* v. *Weir,* 110 Fed. 1005; *The Thames,* 10 Fed. 848; *Plummer* v. *Webb,* 4 Mason, 380; *Grant* v. *Poillon,* 20 How. 162; *The Ada,* 250 Fed. 194; *Pacific Surety Co.* v. *Leatham Co.,* 151 Fed. 440.

On any hypothesis, no reason exists for holding an agreement to arbitrate to be maritime. Its enforcement

no more calls for the application of any maritime principle than would a controversy as to fraud or mistake in its inception, where only the common law courts (as distinguished from the admiralty courts) could assume jurisdiction of the controversy or grant any relief in reference thereto.

If the subject matter of the agreement to arbitrate is the subject matter of the various and varying controversies that may thereafter arise by reason of the asserted breach of other covenants of the principal contract, the measure of damages for the breach of the arbitration agreement in an action at law would not be the loss resulting from the breach of that agreement, but rather the loss suffered by reason of the alleged breach of the other covenants of the contract; an obvious absurdity. *Munson* v. *Straits of Dover S. S. Co.,* 99 Fed. 787, distinguished.

But even if the agreement to arbitrate should be considered maritime, the equity court has jurisdiction to compel its specific performance. *The Eclipse,* 135 U. S. 599; *Andrews* v. *Essex Ins. Co.,* 3 Mason, 6; *Meyer* v. *Pacific Mail S. S. Co.,* 58 Fed. 923; *Dean* v. *Bates,* 2 Woodb. & M. 87; *Kynock* v. *Ives,* Newb. 205; *Steamboat Co.* v. *Chase,* 16 Wall. 522.

Settlement of maritime controversies by arbitration is not inhibited by the provision conferring jurisdiction of maritime causes on admiralty courts. Congress in its exception did not save to suitors a remedy in the common law courts but a common law remedy. *Berry* v. *Donovan & Sons,* 120 Me. 457. Arbitration, while not an action, was nevertheless a well known remedy at common law for the settlement of controversies. Admiralty courts, like the common law courts, have always considered as valid, and upheld, the awards made in such controversies. *Toledo S. S. Co.* v. *Zenith Transp. Co.,* 184 Fed. 391.

Whether a court intervenes to decree the specific performance of the agreement or it is carried out without its intervention, the jurisdiction of the arbitrators, that is the power to hear and determine, results from the agreement of the parties, not from the mandate of the court, and hence it would seem that their jurisdiction is as valid in the one case as in the other.

The state court in enforcing an agreement does not deny to the admiralty court its exclusive jurisdiction merely because by reason of such enforcement a forum other than the admiralty may determine the event and measure of damages for the breach of a maritime contract. *Pacific Surety Co.* v. *Leatham Co.*, 151 Fed. 440.

That a party by contract may waive not only his rights under the maritime law, but also the right to resort to the admiralty court for the adjustment of his disputes, seems to be the effect of *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469. It is not the policy of the law to compel parties to litigate disputes, maritime or otherwise. *West* v. *Kozer,* 104 Ore. 94

The so-called public policy rule against specific performance of such contracts should not be extended. The supposed policy itself is one of the common law; not of the admiralty. It has been followed in the admiralty, as in the state courts, in deference to early precedent, although with frequent protest. *United States Asphalt Co.* v. *Trinidad Lake Co.*, 222 Fed. 1006; *Atlantic Fruit Co.* v. *Red Cross Line,* 276 Fed. 319; *Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 276. It has now been repudiated and abandoned by the courts of England in which it originated. *Atlantic Shipping Co.* v. *Dreyfus & Co.,* 10 Lloyd's List Law Rep. 707; *Aktieselskabet, Korn-Og, etc.* v. *Rederiaktiebolaget Atlanten,* 250 Fed. 935.

Even if the ultimate controversies between the parties are the subject of the state remedy, the state remedy is the

equivalent of a common law remedy and is one that is saved to suitors. The clause saving a common law remedy has always been held to confer concurrent jurisdiction on the state courts to furnish a common law remedy in civil cases of maritime origin even if the jurisdiction had not existed before. *New Jersey Nav. Co.* v. *Merchants Bank,* 6 How. 344; *Propeller Genesee Chief,* 12 How. 443; *The Belfast,* 7 Wall. 624; *Leon* v. *Galceran,* 11 Wall. 185; *Schoonmaker* v. *Gilmore,* 102 U. S. 118; *Insurance Co.* v. *Dunham,* 11 Wall. 1; *Manchester* v. *Massachusetts,* 139 U. S. 262.

[Counsel reviewed the following cases interpreting the saving clause. *The Moses Taylor,* 4 Wall. 411; *The Hine* v. *Trevor,* 4 Wall. 555; *The Belfast,* 7 Wall. 624; *The Lottawanna,* 21 Wall. 558; *The J. E. Rumbell,* 148 U. S. 1; *The Glide,* 167 U. S. 606; *Knapp, Stout & Co.* v. *Mc-Caffrey,* 177 U. S. 638; *Leon* v. *Galceran,* 11 Wall. 185; *Rounds* v. *Cloverport Foundry Co.,* 237 U. S. 303; *Johnson* v. *Westerfield,* 143 Ky. 10; *Chase* v. *Steamboat Co.,* 9 R. I. 419; affd. 16 Wall. 522; *The Kalfarli,* 277 Fed. 391. Distinguishing: *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Union Fish Co.* v. *Erickson,* 248 U. S. 308; *Watts* v. *Camors,* 115 U. S. 353. See *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469.]

The uniformity rule is directed toward statutes changing rights and liabilities definitely fixed by maritime rules. *Jensen and Stewart Cases, supra; Industrial Commission* v. *Nordenholt Corporation,* 259 U. S. 263; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372.

The arbitration statute neither changes nor impairs the rights and obligations fixed by maritime rules.

Remedies are regulated by the *lex fori. Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372.

*Mr. John W. Crandall,* with whom *Edna Rapallo* was on the brief, for respondent.

The dispute between the parties herein arose out of a maritime contract and hence is within the exclusive jurisdiction of the admiralty courts, except as a common law remedy may have been saved to the petitioner. The New York Arbitration Law has provided a new remedy, unknown to the common law, for the adjustment of controversies.

A charter-party is a maritime contract, and accordingly within the exclusive admiralty and maritime jurisdiction of the federal courts, except for the saving clause of the Judicial Code. *Morewood* v. *Enequist,* 23 How. 491; *Metropolitan S. S. Co.* v. *Pacific Alaska Nav. Co.,* 260 Fed. 973; *Dunbar* v. *Weston,* 93 Fed. 472.

The saving clause refers on its face to remedies, and this has been construed to mean common law remedies and not remedies in common law courts. *The Moses Taylor,* 4 Wall. 411; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372. This Court has held that the New York Workmen's Compensation Act provided a remedy and was unconstitutional in so far as such remedy was designed to cover matters of a maritime nature. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149. In the present case, petitioner relies upon the new remedy given by the Arbitration Law. *Berkovitz* v. *Arbib & Houlberg, Inc.,* 230 N. Y. 261; *Red Cross Line* v. *Atlantic Fruit Co.,* 233 N. Y. 373.

It is highly questionable whether there is anything for this Court to review, inasmuch as the Court of Appeals, by holding that the Arbitration Law was not intended to apply to maritime controversies, has left nothing of a federal nature for this Court to consider. The Court of Appeals has not passed upon the constitutionality of the law. If it erred in deciding that the dispute is maritime, the petitioner has in no way been deprived of any right under the Federal Constitution and laws.

The agreement to arbitrate is part of a maritime contract, and is void in the federal forum. To sustain and enforce it, the state courts would deny to the federal court the exclusive jurisdiction with which Congress has clothed it, and likewise destroy a rule of uniformity.

The admiralty and maritime jurisdiction covers not merely the cognizance of the case, but the jurisdiction and principles by which it is to be administered. A State has no right to step in and fill up by its own legislation what is not actually occupied by that of Congress. *The Chusan,* 5 Fed. Cas. No. 2717. It could not have been the intention of Congress, by the exception, to give the suitor all such remedies as might afterwards be enacted by state statutes, for this would have enabled the States to make the jurisdiction of their courts concurrent in all cases. *The Hine* v. *Trevor,* 4 Wall. 555; *Brookman* v. *Hamill,* 43 N. Y. 554; *The Lottawanna,* 21 Wall. 558; *The J. E. Rumbell,* 148 U. S. 1.

Not only have the States no power to enact laws giving to suitors an admiralty remedy such as a suit *in rem,* but they have no authority to pass any law regulating or affecting maritime matters which may tend to impair that uniformity which is so essential to the application of the maritime law through all of the States. *Union Fish Co.* v. *Erickson,* 248 U. S. 308; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Watts* v. *Camors,* 115 U. S. 353; *Workman* v. *New York City,* 179 U. S. 552; *The Thielbek,* 241 Fed. 209; *Rodgers & Hagerty, Inc.* v. *New York City,* 285 Fed. 362; *Atlantic Fruit Co.* v. *Red Cross Line,* 276 Fed. 319.

When a party to an arbitration agreement initiates proceedings in the New York Supreme Court under the Arbitration Law to compel the other party to arbitrate, he starts something which does not end until the issue has been finally and completely settled. And the matter can

be disposed of without the necessity of recourse to any other court.

What would finally become of the admiralty law of the United States if the act under consideration were held to be a proper subject of state legislation as regards maritime controversies? In the present case we should have such questions as to whether or not the master prosecuted the voyage with the utmost despatch, whether the vessel was off hire under the "break-down" clause in the charter, whether she encountered a peril of the sea, or whether or not the deviation to the Azores was justified, submitted to the decision of arbitrators who probably would not be versed in the maritime law. Certainly they would not be bound to follow any precedents, and in most cases would probably not be lawyers, and their award could only be set aside upon proof of fraud or of some other irregularity.

The petitioner argues that the Arbitration Law has not created a new remedy, but simply made available the old common law remedy of specific performance. An arbitration agreement such as the present one was never an enforceable agreement. *United States Asphalt Co.* v. *Trinidad Lake Co.*, 222 Fed. 1006; *Insurance Co.* v. *Morse*, 20 Wall. 45; *Doyle* v. *Insurance Co.*, 94 U. S. 535; *Atlantic Fruit Co.* v. *Red Cross Line*, 276 Fed. 319. The only recourse which a suitor would have had previous to the enactment of the Arbitration Law was a suit for damages for breach of contract. Any argument as to whether the statute created or made available a remedy is foreclosed by the decision cf the Court of Appeals in this case.

The petitioner says the dispute is over arbitration, and not over its right to the repayment of certain moneys. The real object, however, was to have the right to reimbursement decided by arbitrators under the sanction of the court. An arbitration clause in a charter-party is a

subject of admiralty jurisdiction. *Munson* v. *Straits of Dover S. S. Co.,* 99 Fed. 787.

In determining whether or not a contract is maritime, we must look to its subject matter. This one was made on land and would be performed on land, but nevertheless refers to maritime disputes. *North Pacific S. S. Co.* v. *Hall Bros. Co.,* 249 U. S. 119; *Baltimore Co.* v. *Paterson,* 106 Fed. 736; *Graham* v. *Oregon Co.,* 135 Fed. 608.

Furthermore, when petitioner demanded arbitration and filed its petition, the matters in dispute were obviously maritime and such as the admiralty courts are considering daily. It follows that the agreement is maritime and hence within the admiralty jurisdiction, except where a common law remedy is saved. *The Ada,* 250 Fed. 194, and *Pacific Surety Co.* v. *Leatham Co.,* 151 Fed. 440, distinguished. Cf. *Haller* v. *Fox,* 51 Fed. 289.

It is of course conceded that actions solely for the breach of non-maritime covenants could not be maintained in an admiralty court simply because they were contained in a contract otherwise maritime. *Richard* v. *Holman,* 123 Fed. 734. This doctrine, however, is limited to such covenants as are distinct and separate in themselves, and unrelated to the maritime provisions of the agreement.

The cases of *Western Fuel Co.* v. *Garcia,* 257 U. S. 233; *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469; and *Industrial Commission* v. *Nordenholt Corporation,* 259 U. S. 263; in no way change or modify the rule laid down in the authorities previously cited.

Not only cannot a State enact a law providing a remedy of a peculiarly admiralty nature against a ship *in rem,* but it cannot pass any law affecting matters of a maritime nature which impairs or tends to impair the essential uniformity of the maritime law in the United States.

The rule applied in *Steamboat Co.* v. *Chase, supra,* where there was no remedy in the admiralty courts at

that time for the injury involved, cannot be applied in the case of a claim connected with a charter-party, because the admiralty courts have always taken jurisdiction of suits involving such agreements.

The argument that only a common law remedy is sought flies directly in the face of the decision by the court below that the law gives a statutory legal remedy of a character unknown to the common law.

Mr. Justice Brandeis delivered the opinion of the Court.

The Arbitration Law of New York, enacted April 19, 1920, c. 275, and amended March 1, 1921, c. 14, declares that a provision in a written contract to settle by arbitration a controversy thereafter arising between the parties " shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." It authorizes the Supreme Court, or a judge thereof, to direct, upon the application of a party to such an agreement, that the arbitration proceed in the manner so provided; to appoint an arbitrator for the other party, in case he fails to avail himself of the method prescribed by the contract; and to stay trial of the action, if suit has been begun. The law applies to contracts made before its enactment, if the controversy arose thereafter. *Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261, 270, 271. Prior to this statute an agreement to arbitrate was legal in New York and damages were recoverable for a breach thereof. *Haggart* v. *Morgan,* 5 N. Y. 422, 427. But specific performance of the promise would not be enforced; the promise could not be pleaded in bar of an action; and it would not support a motion to stay. *Finucane Co.* v. *Board of Education,* 190 N. Y. 76, 83. These limitations upon the enforcement of a promise to arbitrate had been held to be part of the law of remedies. *Meacham* v. *James-*

*town, etc. R. R. Co.,* 211 N. Y. 346, 352. The purpose of the statute was to make specific performance compellable. 230 N. Y. 261, 269. Whether agreements for arbitration of disputes arising under maritime contracts are within the scope of the statute, and whether, if so construed and applied, the state law conflicts with the Federal Constitution, are the questions for decision.

Proceeding under the Arbitration Law, the Red Cross Line applied to the Supreme Court of the State, on April 12, 1921, for an order directing the Atlantic Fruit Company to join with it in the arbitration of a dispute arising out of the charter of the steamship Runa. The substantive claim was that the master had not prosecuted the voyage with the utmost dispatch and, hence, that certain amounts paid by the charterer should be returned. The charter party, which had been executed in New York on November 28, 1919, contained the following provision:

" That should any dispute arise between Owners and Charterers, the matters in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision, or that of any two of them, shall be final and for the purpose of enforcing any award, this agreement may be made a rule of Court. . . ."

Before instituting this proceeding the Red Cross Line had duly appointed its arbitrator; but the Atlantic Fruit Company had refused to appoint the one to be named by it. The court ordered the latter company to proceed to arbitration as provided in the contract, and to appoint its arbitrator by a day fixed. This order was affirmed by the Appellate Division without opinion. Its judgment was reversed by the Court of Appeals, which stated that the controversy between the parties is one of admiralty; that under Article III, § 2, of the Federal Constitution, and § 256, Clause Third, of the Judicial Code,

such controversies are within the exclusive jurisdiction of the admiralty courts; and that the State had no power to compel the charter owner to proceed to arbitration. *Matter of Red Cross Line* v. *Atlantic Fruit Co.*, 233 N. Y. 373. The case is here on writ of certiorari under § 237 of the Judicial Code, as amended. 260 U. S. 716.

Respondent contends that the petition should be dismissed for lack of a federal question. The argument is that the Court of Appeals held, as a matter of statutory construction, that the Arbitration Law does not extend to controversies which are within the admiralty jurisdiction; and that the substantive claim sought to be enforced is so cognizable. The claim to recover an amount paid under a charter party as charter hire is within the admiralty jurisdiction. *Morewood* v. *Enequist,* 23 How. 491. If that court had construed the Arbitration Law as excluding from its scope controversies which are within the admiralty jurisdiction, the construction given to the state statute would bind us; and there would be no occasion to consider the constitutional question presented. *Quong Ham Wah Co.* v. *Industrial Accident Commission,* 255 U. S. 445; *Ward & Gow* v. *Krinsky,* 259 U. S. 503, 510. An expression used by the Court of Appeals lends some color to respondent's contention, 233 N. Y. 373, 381. But a reading of the whole opinion shows that the state court excluded maritime contracts from the operation of the law, not as a matter of statutory construction, but because it thought the Federal Constitution required such action. Compare *State Industrial Commission* v. *Nordenholt Corporation,* 259 U. S. 263. We proceed, therefore, to the consideration of the constitutional question.

The federal courts—like those of the States and of England—have, both in equity and at law, denied, in large measure, the aid of their processes to those seeking to en-

force executory agreements to arbitrate disputes. They have declined to compel specific performance, *Tobey* v. *County of Bristol,* 3 Story, 800, 819–826;[1] or to stay proceedings on the original cause of action. Story, Equity Jurisprudence, § 670. They have not given effect to the executory agreement as a plea in bar; except in those cases where the agreement, leaving the general question of liability to judicial decision, confines the arbitration to determining the amount payable or to furnishing essential evidence of specific facts, and makes it a condition precedent to the cause of action. *Hamilton* v. *Liverpool, London & Globe Insurance Co.,* 136 U. S. 242, 255; *Martinsburg & Potomac R. R. Co.* v. *March,* 114 U. S. 549. But an agreement for arbitration is valid, even if it provides for the determination of liability. If executory, a breach will support an action for damages. *Hamilton* v. *Home Insurance Co.,* 137 U. S. 370, 385–386. If executed,—that is, if the award has been made,—effect will be given to the award in any appropriate proceeding at law, or in equity. *Karthaus* v. *Ferrer,* 1 Pet. 222; *Burchell* v. *Marsh,* 17 How. 344; *Bayne* v. *Morris,* 1 Wall. 97. And, although there is no federal legislation on the subject, an executory agreement, however comprehensive, will, if made a rule of court, be

---

[1] Mr. Justice Story said (p. 821): "Courts of Equity do not refuse to interfere to compel a party specifically to perform an agreement to refer to arbitration, because they wish to discourage arbitrations, as against public policy. On the contrary, they have and can have no just objection to these domestic forums, and will enforce, and promptly interfere to enforce their awards when fairly and lawfully made, without hesitation or question. But when they are asked to proceed farther and to compel the parties to appoint arbitrators whose award shall be final, they necessarily pause to consider, whether such tribunals possess adequate means of giving redress, and whether they have a right to compel a reluctant party to submit to such a tribunal, and to close against him the doors of the common Courts of justice, provided by the Government to protect rights and to redress wrongs."

enforced in courts of the United States by any appropriate process. *Heckers* v. *Fowler*, 2 Wall. 123.[2]

In admiralty, also, agreements to submit controversies to arbitration are valid. Reference of maritime controversies to arbitration has long been common practice.[3] *Houseman* v. *Schooner North Carolina*, 15 Pet. 40, 45. The insertion in a charter party of a provision for such settlement of disputes arising thereunder was practiced, at least, as early as the eighteenth century. *Thompson* v. *Charnock*, 8 Durnford & East, 139. For breach of an executory agreement a libel for damages will lie.[4] An executory agreement may be made a rule of court. *United States* v. *Farragut*, 22 Wall. 406, 419; *Kleine* v. *Catara*, 2 Gall. 61.

---

[2] See, also, *Thornton* v. *Carson*, 7 Cranch, 596; *Carnochan* v. *Christie*, 11 Wheat. 446; *Lutz* v. *Linthicum*, 8 Pet. 165; *Alexandria Canal Co.* v. *Swann*, 5 How. 83; *York & Cumberland R. R. Co.* v. *Myers*, 18 How. 246; *Newcomb* v. *Wood*, 97 U. S. 581, 583. The practice of making the agreement for arbitration a rule of court was introduced by Stat. 9 & 10, William III, c. 15. See Russell on Arbitrators, 5th ed., 52.

[3] In England maritime controversies were settled by arbitration as early as 1320. Selden Society, Select Pleas in the Court of Admiralty, Vol. 1, pp. xxii, xxiii. After the establishment of that court (about 1340, *ibid* xiv) arbitration became a common mode of settling disputes in shipping cases. "The parties appear to have usually executed a bond or entered into recognizance in the Admiralty Court to execute the award; there are several suits to enforce such a bond or to compel performance of the award." *Ibid*. lxix; lxi; [1539], p. 90; [1540], p. 101; Vol. II; [1548], p. 18; [1571], p. lxx; [1573], p. lxxi; [1575], p. 39; [1589], p. 44.

The phraseology of the arbitration clause here in question is identical with that contained in the common form of the time charter party long in use. Scrutton, Charter Parties and Bills of Lading (1886), pp. 268, 270. The form appears as clause 15 of the charter party executed in New York in 1885 which was involved in *Compania Bilbaina* v. *Spanish-American Light & Power Co.*, 146 U. S. 483.

[4] See *Ross* v. *Compagnie Commerciale, etc.*, 45 Fed. 207, 208; *Munson* v. *Straits of Dover S. S. Co.*, 99 Fed. 787; 102 Fed. 926; *Aktieselskabet, Korn-Og, etc.* v. *Rederiaktiebolaget Atlanten*, 250 Fed. 935, 937.

An award will be given full effect.[5] The agreement whether executory or executed, can not be enforced in admiralty by specific performance; merely because that court lacks the power to grant equitable relief. *The Eclipse,* 135 U. S. 599, 608.[6] The executory agreement (perhaps in deference to the rule prevailing at law and in equity) will not be given effect as a bar to a libel on the original cause of action. The reluctance of the admiralty court to lend full aid goes, however, merely to the remedy. The substantive right created by an agreement to submit disputes to arbitration is recognized as a perfect obligation.[7]

By reason of the saving clause, state courts have jurisdiction *in personam,* concurrent with the admiralty courts, of all causes of action maritime in their nature arising under charter parties. Judiciary Act of September 24, 1789, c. 20, § 9, 1 Stat. 73, 77; Judicial Code, § 24, par. 3; *Leon* v. *Galceran,* 11 Wall. 185; *Schoonmaker* v. *Gilmore,* 102 U. S. 118; *Chappell* v. *Bradshaw,* 128 U. S. 132; *De Lovio* v. *Boit,* 2 Gall. 398, 475. The "right of a common law remedy", so saved to suitors, does not, as has been held in cases which presently will be mentioned, include

[5] See *McConnochie* v. *Kerr,* 9 Fed. 50, 57, 58; *Toledo S. S. Co.* v. *Zenith Transp. Co.,* 184 Fed. 391, 401; *Hannevig* v. *Sutherland & Co.,* 256 Fed. 445.

[6] Admiralty is likewise unable to afford relief by way of reformation of a marine contract, *Andrews* v. *Essex Fire & Marine Ins. Co.,* 3 Mason, 6, 16; or to set it aside for fraud, *Dean* v. *Bates,* 2 Woodb. & M. 87, 90; or to establish an equitable title in a ship; or to take an account among part owners, *Kellum* v. *Emerson,* 2 Curt. 79, 82; or to put an equitable owner of a ship into possession, *Kynoch* v. *The Propeller S. C. Ives,* Newb. Ad. 205, 211. In all such cases, as in the case of specific performance, the relief must be sought in a court of equity.

[7] See *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.,* 222 Fed. 1006; *Aktieselskabet, Korn-Og, etc.* v. *Rederiaktiebolaget Atlanten,* 232 Fed. 403, 405; *The Eros,* 241 Fed. 186, 191.

attempted changes by the States in the substantive admiralty law, but it does include all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. It includes remedies *in pais,* as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity, as well as those enforceable in a court of law. *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 644, *et seq.; Rounds* v. *Cloverport Foundry & Machine Co.,* 237 U. S. 303. A State may not provide a remedy *in rem* for any cause of action within the admiralty jurisdiction. *The Hine* v. *Trevor,* 4 Wall. 555; *The Glide,* 167 U. S. 606. But otherwise, the State, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit. New York, therefore, had the power to confer upon its courts the authority to compel parties within its jurisdiction to specifically perform an agreement for arbitration, which is valid by the general maritime law, as well as by the law of the State, which is contained in a contract made in New York and which, by its terms, is to be performed there.

This state statute is wholly unlike those which have recently been held invalid by this Court. The Arbitration Law deals merely with the remedy in the state courts in respect of obligations voluntarily and lawfully incurred. It does not attempt either to modify the substantive maritime law or to deal with the remedy in courts of admiralty. The Workmen's Compensation Laws involved in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Clyde S. S. Co.* v. *Walker,* 244 U. S. 255; *Peters* v. *Veasey,* 251 U. S. 121; and *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, were declared invalid, because their provisions were held to modify or displace essential features of the substantive maritime law. In *Union Fish Co.* v. *Erickson,* 248 U. S. 308, the state statute did not deal with the substantive maritime law. It was held invalid, because, as construed

and applied, it attempted to modify the remedial law of
the admiralty courts. The state statutes involved in all
the other cases were declared valid. Those giving the
substantive right to recover for negligence resulting in
death were upheld, because they merely supplemented
the substantive maritime law and did not conflict with
any essential feature of it. *Western Fuel Co.* v. *Garcia*,
257 U. S. 233; *Great Lakes Dredge & Dock Co.* v. *Kiere-
jewski*, 261 U. S. 479. See also *Steamboat Co.* v. *Chase*,
16 Wall. 522; *Sherlock* v. *Alling*, 93 U. S. 99, 104; *The
Hamilton* 207 U. S. 398; *La Bourgogne*, 210 U. S. 95, 138.
The Workmen's Compensation Laws involved in other
cases were upheld, because their provisions, as applied,
were found not to be in conflict with any essential feature
of the general maritime law. *Grant Smith-Porter Ship
Co.* v. *Rohde*, 257 U. S. 469; *Industrial Commission* v.
*Nordenholt Co.*, 259 U. S. 263. No state statute was in-
volved in *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372.
The Court held there that under the general maritime law
the seaman had no substantive right to recover; that this
rule of substantive maritime law applied whether he sued
in the state courts or in the court of admiralty; and that
the Seaman's Act of 1915 did not change this rule of sub-
stantive law. In no case has this Court held void a state
statute which neither modified the substantive maritime
law, nor dealt with the remedic enforceable in admiralty.

As the constitutionality of the remedy provided by
New York for use in its own courts is not dependent upon
the practice or procedure which may prevail in admiralty,
we have no occasion to consider whether the unwillingness
of the federal courts to give full effect to executory agree-
ments for arbitration can be justified.[8]

*Reversed.*

---

[8] See *The Atlanten*, 252 U. S. 313, 315; *United States Asphalt Re-
fining Co.* v. *Trinidad Lake Petroleum Co.*, 222 Fed. 1006; *Aktiesels-
kabet, Korn-Og, etc.* v. *Rederiaktiebolaget Atlanten*, 250 Fed. 935;
*Atlantic Fruit Co.* v. *Red Cross Line*, 276 Fed. 319.

The separate opinion of MR. JUSTICE McREYNOLDS.

This controversy arose out of a charter-party dated November 28, 1919, a maritime contract, which contains a clause providing for the settlement of disputes by arbitration. 233 N. Y. 373.

Parties to such agreements contract with reference to the maritime law; consequent rights and liabilities depend upon its rules and are the same in all courts, admiralty or state. This general doctrine, definitely stated in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, has been reaffirmed and applied again and again. *Clyde S. S. Co.* v. *Walker,* 244 U. S. 255; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Union Fish Co.* v. *Erickson,* 248 U. S. 308; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233; *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469; *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255; *Industrial Commission* v. *Nordenholt Co.,* 259 U. S. 263; *Osaka Shosen Kaisha* v. *Pacific Lumber Co.,* 260 U. S. 490; *Great Lakes Co.* v. *Kierejewski,* 261 U. S. 479.

No admiralty court would enforce the arbitration clause of the charter-party before us—their accepted policy forbids. Accordingly, it was not obligatory upon the parties. The law of the sea became part of their agreement.

But it is said, under the local law a state court may enforce arbitration and thus effectuate the provision, although unenforceable in admiralty, since the statute relates to the remedy and not to substantive rights. In *Union Fish Co.* v. *Erickson,* an admiralty cause, we refused to give effect to the state statute of frauds, holding that the parties had contracted with reference to maritime law, not the local enactment. Here, also, the effort is to modify an agreement made with reference to the general rules of maritime law by applying the local law. Certainly this could not be done in an admiralty court;

no more should it be possible under state practice. If *Union Fish Co.* and *Erickson* had been before a state tribunal the applicable rule would have been the same and would have required enforcement of the contract notwithstanding the local statute. Obligations under maritime contracts do not vary with the tribunal.

Fifty years ago this Court pointed out the essential relationship between rights and remedies. *Von Hoffman* v. *City of Quincy,* 4 Wall. 535, 552. " Nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfilment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. The obligation of a contract ' is the law which binds the parties to perform their agreement.' "

Under the guise of providing remedies no state statute may add to or take from the obligations imposed by the contract within the admiralty jurisdiction. The doctrine concerning the general maritime law announced here over and over again forbids. If state courts can enforce provisions for compulsory arbitration contrary to the policy of the admiralty courts, what will become of the uniformity of maritime rules which the Constitution undertook to establish?

---

The Judicial Code, § 256, endows the District Court with exclusive jurisdiction " of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." The remedy saved must relate to some right or liability given or imposed by maritime law—certainly not one which that law does

not recognize. Furthermore, common-law remedy is the thing excepted from the exclusive jurisdiction, not a remedy wholly unknown to that law. *The Moses Taylor,* 4 Wall. 411, 430, 431, distinctly announced this construction—

"The cognizance of civil causes of admiralty and maritime jurisdiction vested in the District Courts by the ninth section of the Judiciary Act, may be supported upon like considerations. It has been made exclusive by Congress, and that is sufficient, even if we should admit that in the absence of its legislation the State courts might have taken cognizance of these causes. But there are many weighty reasons why it was so declared. 'The admiralty jurisdiction,' says Mr. Justice Story, 'naturally connects itself, on the one hand, with our diplomatic relations and the duties to foreign nations and their subjects; and, on the other hand, with the great interests of navigation and commerce, foreign and domestic. There is, then, a peculiar wisdom in giving to the national government a jurisdiction of this sort which cannot be yielded, except for the general good, and which multiplies the securities for the public peace abroad, and gives to commerce and navigation the most encouraging support at home.'

"The case before us is not within the saving clause of the ninth section. That clause only saves to suitors 'the right of a common-law remedy, where the common law is competent to give it.' It is not a remedy in the common-law courts which is saved, but a common-law remedy. A proceeding *in rem,* as used in the admiralty courts, is not a remedy afforded by the common law; it is a proceeding under the civil law. When used in the common-law courts, it is given by statute."

The same view is approved by *The Hine* v. *Trevor,* 4 Wall. 555, 571; *The Glide,* 167 U. S. 606, 616, 617; and *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 644, 648.

The latter cause " was clearly one *in personam* to enforce a common-law remedy." The opinion carefully points out that the state court enforced such a remedy and, further, (p. 640) that not until 1866, *The Moses Taylor,* was the exclusive character of admiralty jurisdiction brought to this Court's attention. Earlier opinions must be read accordingly, with *Southern Pacific Co.* v. *Jensen* and the uniformity of maritime rules in mind. *Rounds* v. *Cloverport Foundry,* 237 U. S. 303, 308, follows *Knapp, Stout & Co.* v. *McCaffrey.*

Even where permitted by local law state courts cannot entertain proceedings *in rem* for the reason stated by *The Moses Taylor.* "A proceeding *in rem,* as used in the admiralty courts, is not a remedy afforded by the common law; it is a proceeding under the civil law. When used in the common-law courts, it is given by statute." The same reason inhibits state courts from enforcing any remedy not recognized at common law when the controversy is within the admiralty cognizance. Common-law remedies are within the saving clause, and no others. It is not enough that one has been provided by statute.

*The Hine* v. *Trevor* (p. 571) declares—" But it could not have been the intention of Congress, by the exception in that section, to give the suitor all such remedies as might afterwards be enacted by State statutes, for this would have enabled the States to make the jurisdiction of their courts concurrent in all cases, by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the Federal courts would be defeated." This negatives the suggestion that the remedy of the saving clause includes any means other than proceedings *in rem* which may be provided for the enforcement of rights or to redress injuries.

*Knapp, Stout & Co.* v. *McCaffrey* (p. 648) clearly affirms that the thing saved to suitors is the right of a common-law remedy. " The true distinction between

97851°—24——9

such proceedings as are and such as are not invasions of the exclusive admiralty jurisdiction is this: If the cause of action be one cognizable in admiralty, *and* the suit be *in rem* against the thing itself, though a monition be also issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction, *or* if the suit be *in personam* against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute (sec. 563) of a common-law remedy. The suit in this case being one in equity to enforce a common-law remedy, the state courts were correct in assuming jurisdiction."

I can find no authority for the broad claim that the " right of a common-law remedy " extends to any and all means other than proceedings *in rem* which may be employed to enforce rights or redress injuries, including remedies *in pais* as well as proceedings in court, those conferred by statute as well as those existing at common law. Neither *Knapp, Stout & Co.* v. *McCaffrey* nor *Rounds* v. *Cloverport Foundry* supports it. It conflicts with *The Hine* v. *Trevor,* and is clearly opposed by the reason advanced in *The Moses Taylor* for excluding proceedings *in rem* from state courts.

The court below has held [1] that the New York arbitration law, c. 275, Laws N. Y. 1920,[2] provides " a statutory

---

[1] *Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261, 269.

[2] " Sec. 2. A provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the code of civil procedure, shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

legal remedy of a character unknown to the common law . . . declares a new public policy, and abrogates an ancient rule." This statutory remedy is not of the common law nor were the proceedings under review instituted to enforce such a remedy, as was *Knapp, Stout & Co. v. McCaffrey.* See *Southern Pacific Co. v. Jensen.*

---

If petitioner is right, why may not a State require the parties to any maritime contract to submit their controversies to varying methods of arbitration and thus introduce the very discord which framers of the Constitution intended to prevent by adopting general maritime rules as laws of the United States? Also why may it not apply other than common-law remedies to controversies within admiralty jurisdiction contrary to plain congressional enactment and repeated decisions of this Court?

To announce principles is not enough; they should be followed. I think opinions of this Court led the conclusion of the court below and require affirmation of its judgment.