## CITIES SERVICE OIL CO. v. AMERICAN MINERAL SPIRITS CO.

District Court, S. D. New York.
Aug. 10, 1937.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for Cities Service Co.

Hill, Rivkins & Middleton, of New York City (Robert E. Hill, of New York City, of counsel), for American Mineral Spirits Co.

KNOX, District Judge.

This is a motion to confirm an arbitration award. Under date of July 3, 1936, the parties entered into a contract whereby Cities Service Oil Company chartered to American Mineral Spirits Company the tank steamer Hadnot for the transportation of fuel oil on one voyage from a safe port in the United States Gulf to a safe port north of Cape Hatteras not north nor east of New York City. On July 21, 1936, the parties agreed to extend the charter party

for one additional consecutive voyage. In accord with the charter party a cargo of Spirits' No. 2 and No. 4 heating oils was carried from Corpus Christi, Tex., to Carteret, N. J. Upon discharge, discovery was made that the oil had become contaminated. Thereupon, Spirits withheld, on account of the charter hire, a sum equivalent to the loss suffered by reason of the contamination.

Although the charter party contained a provision for arbitration, Spirits suggested that the dispute could be settled more satisfactorily in the federal courts. However, Cities Service insisted on invoking clause 31 of the charter party which reads as follows:

"31. Any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the owner, one by the charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute of differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person, with precisely the same force and effect as if said second arbitrator had been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a Judge of any court of maritime jurisdiction in the city above mentioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such Judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the ar-

bitrators and on an officer of the other party to specify further disputes or differences under this charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any court having jurisdiction in the premises."

In accordance with cause 31, each party designated an arbitrator and the designees duly chose a third. The proceedings then went forward, and, in due course, an award was rendered in favor of Spirits. On July 14, 1937, counsel for Spirits served on counsel for Cities Service papers relating to a motion in this court to confirm the award. Later on the same day, counsel for Cities Service served on Spirits' counsel an order to show cause returnable before the Supreme Court of New York county, which specified several grounds for vacating the award. Spirits opposed the relief there asked on jurisdictional grounds and, after argument, the Supreme Court justice sustained that contention, ruling as follows:

"Motion to vacate an award. The parties signed an agreement in which they provided that any proceeding to force an arbitration should be had before a court of maritime jurisdiction. This dispute arises on a maritime contract. The arbitration clause does not state (in words) to what court application for judgment is to be made. If the arbitration clause does not name the court in which application for judgment is to be made, and as (unless tacitly the Federal Court is named) no court is named, United States Arbitration Act, § 9 [9 U.S.C.A. § 9], covers and provides that the application must be made to the Federal Court. The successful party has marked the jurisdiction of the Federal Court before the unsuccessful party applied here. So either the Federal Court has exclusive jurisdiction or this Court should decline jurisdiction. The motion is denied. If the moving party so elects it may enter an order referring the motion to the Federal Court."

Thereupon, in this court, Spirits brought on its motion to confirm. Cities Service opposes favorable action thereon, urging the same grounds on which it sought to set aside the award in the state court, viz.:

"1. That the arbitrators failed to take an oath as prescribed by C.P.A., § 1452,

and there was no written or oral waiver of the said oath.

"2. The intended award is invalid because it was not acknowledged or proved and certified as required by C.P.A. § 1455.

"3. The intended award should be vacated as in violation of C.P.A., § 1457, subd. 1, because of the partiality of Arbitrator Stanley.

"4. The intended award should be vacated as in violation of C.P.A., § 1457, subd. 4, because Arbitrators Stanley and French exceeded their powers, or so imperfectly executed them, that the so-called award was not final and definite on the subject matter submitted.

"5. That the arbitrators' fees exceeded those allowed by C.P.A., § 1454."

Cities Service also contends that, if the arbitration laws of New York are not applicable, then under the United States Arbitration Act the award should be vacated.

The first point of difference between the parties relates to whether this court should apply to the dispute the laws of New York or of the United States. It must be confessed that the arguments predicated on clause 31 lead to a drawn battle. Cities Service stresses the first sentence of clause 31 which states that "any and all differences * * * shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force. * * *" It argues that this sentence must refer to the law of New York. Spirits, however, points out that the federal act is likewise in force in New York City, and I cannot assert that the aforequoted sentence is anything but equivocal. The same must be said of the fifth sentence of clause 21, which Spirits contends clearly refers to the federal law. That sentence provides that, if the two designees of the parties fail to agree on a third arbitrator, either one "may apply to a Judge of any court of maritime jurisdiction in the city above mentioned * * *" Spirits argues that the fifth sentence qualifies the first sentence; that clause 31 invokes the laws relating to arbitration in a court of maritime jurisdiction in the city of New York; that a "court of maritime jurisdiction" means only a federal court; and, therefore, that clause 31 refers to the arbitration law in force in the federal courts, viz., the United States Arbitration Act. There are two deficiencies in Spirits' reasoning as here presented:

First, the federal courts are not the only tribunals in the city of New York that may take cognizance of certain maritime disputes. Judicial Code § 24(3), as amended, 28 U.S.C.A. § 41(3), provides that "The district courts shall have original jurisdiction as follows: * * * (3) Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." In Red Cross Line v. Atlantic Fruit Company, 264 U.S. 109, 44 S.Ct. 274, 277, 68 L.Ed. 582, which involved the enforceability in the State Courts of an arbitration provision in a charter party, Mr. Justice Brandeis said: "By reason of the saving clause, state courts have jurisdiction in personam, concurrent with the admiralty courts, of all causes of action maritime in their nature arising under charter parties."

Therefore, it cannot be said that only federal courts can exercise a "maritime jurisdiction."

Secondly, the deduction that because clause 31 refers to the law in the federal courts, that law must be the United States Arbitration Act, begs the question stated above. Despite the stalemate produced by an attempt to utilize clause 31, Spirits' argument furnishes the clue whereby the conclusion is reached that the United States Arbitration Act is the statute to be applied. That the case is properly in this court at this time is not disputed. Jurisdiction in this matter rests either on diversity of citizenship, see Marchant v. Mead-Morrison Manufacturing Company, D.C., 7 F.2d 511, and cf. In re Red Cross Line, D.C., 277 F. 853; or on a law of the United States, see In re Red Cross Line, supra. "Arbitration" in New York jurisprudence has been consigned to the realm of "procedure" or "remedy." Red Cross Line v. Atlantic Fruit Company, 264 U.S. 109, 124, 44 S.Ct. 274, 68 L.Ed. 582. However, it is well-settled law that "Whenever congress has legislated upon any matter of practice, and prescribed a definite rule for the government of its own courts, it is to that extent exclusive of the legislation of the state upon the same matter." Southern Pacific Company v. Denton, 146 U.S. 202, 13 S.Ct. 44, 47, 36 L.Ed. 942. Since Congress has enacted the United States Arbitration Act, that statute must be followed in this forum.

As an additional factor, it should be noted that a suit under the charter party

376

would have been justiciable in admiralty, which the Conformity Act excepts from its operation. It is an open question whether a suit on an arbitrators' award in a dispute otherwise justiciable in admiralty is a suit in a civil cause which is not an admiralty cause. See Marchant v. Mead-Morrison Manufacturing Company, supra.

Section 10 of the United States Arbitration Act, 9 U.S.C.A. § 10, sets forth the grounds for vacating an award, two of which are urged by Cities Service, viz.: "(b) Where there was evident partiality * * * in the arbitrators, or either of them," and "(d) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ The partiality objection is to the effect that Spirits' designee was partial in his questioning of witnesses, i. e., sympathetic with Spirits' witnesses, leading them to conclusions favorable to Spirits, and hostile to Cities Service's witnesses, confusing and browbeating them. It is my opinion that Cities Service's contention here is untenable. The fact that Spirits' designee asked questions on about 125 pages does not prove excessive participation. The record taken before the arbitrators covered 731 pages of testimony on a technical problem of marine engineering. Mr. Stanley, a marine engineer of considerable experience, was in his element as it were, and naturally was ready to meet all expert witnesses on their own ground. From my perusal of the record, and to the extent that the extremely complex engineering problems involved are within my comprehension, I cannot say that the questions and discussion were unduly severe or extraneous. It is noteworthy that at no time during the entire proceeding did counsel for Cities Service object. In the face of a complete failure so to do, the present effort to impugn the arbitrator's impartiality should not serve as a means of obtaining a hearing de novo. The contention as to Mr. Stanley's partiality will be disregarded.

■ The objection to the award based on section 10(d) requires a further delineation of the facts. After the completion of the hearings, the arbitrators convened on June 24 at the office of arbitrator French. Mr. Murphy, Cities Service appointee, took the position that the parties should split the loss. The other arbitrators disagreed,

holding that the entire liability should fall on one or the other of the parties. Mr. Murphy made it clear that he would not consent to an award against Cities Service; he also expressed the opinion that the deciding vote would have to be cast by Mr. French. After further deliberation, the conference adjourned, no definite decision having been made.

Mr. French, working alone, then reviewed the facts and dictated to a stenographer his version of a decision of the controversy. Being satisfied with the decision, he signed it. Then he telephoned the other arbitrators, requesting them to call at his office. Mr. Stanley arrived there first. Mr. French was out, but his secretary showed Mr. Stanley the decision. As it conformed with the latter's ideas, he thereupon signed it. Mr. Murphy came to Mr. French's office the following day and read the decision. Expressing disapproval, he dictated and signed a dissent.

Subsequently, Cities Service sent the arbitrators a letter in which a rehearing and a reargument were requested. Mr. French was of the opinion that a rehearing and reargument would add nothing to what had already transpired. He dictated a letter denying the application and was joined in signing it by Mr. Stanley. It appears that Mr. Murphy was not consulted on this phase.

From the foregoing facts, Cities Service argues that Mr. Murphy was deprived of an opportunity to persuade the other arbitrators of the correctness of his views. However, from the affidavits submitted it is apparent that on June 24th, the arbitrators had pretty well made up their minds. Although the court does not wish to encourage arbitrators to arrive at and decree awards without consulting their colleagues, it cannot be said in this case that sufficient joint consideration of the problems was not attained. As to the failure to consult Mr. Murphy as to the proposed rehearing, I do not consider such action, under the facts of this case, a sufficient basis for setting aside the award. See Marine Transit Corporation v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282.

■ That the arbitrators were generous in their allowances of fees to the attorneys for the disputants, and for themselves, cannot be gainsaid. If arbitration allowances are to be made upon scales such as were used here—a total of approximately $8,000 for the adjustment of a dispute of

less than $4,500—there will be little incentive to contracting parties to provide that their controversies shall be settled by arbitration. At the same time, not the slightest suggestion of corruption or imposition on the part of the arbitration can be made. Counsel for the respective parties themselves suggested that they receive liberal allowances, one asking $1,500, and the other $2,500. The arbitration struck an average between the aggregate of the sums requested, and made their award accordingly. Each of the arbitrators specified that each of them should have $900. Taking into account the earning capacity of the members of the board, and their expert knowledge of the subject with which they were concerned, I cannot say that the fees are excessive.

The award will be confirmed.