SOUDAN PLANTING COMPANY *v.* STEVENSON.

Opinion delivered April 18, 1910.

1. TENDER—KEEPING GOOD.—An undertaking to deliver so many bales of cotton on a certain date is not discharged by a tender of the required number of bales on the day specified if the party making the tender subsequently converted the bales to its own use.   (Page 609.)

2. ARBITRATION—WHEN CONDITION OF RECOVERY.—Where a contract stipulated that if the parties failed to agree as to the amount of damages caused by its nonperformance they each should select an arbitrator, and the decision of such arbitrators should be final, the award of such arbitrators is a condition precedent, unless waived or prevented by one or both of the parties before an action under it can be brought for damages.   (Page 610.)

3. SAME—WHEN CONDITION NOT WAIVED.—Where the parties to a contract agreed that the award of arbitrators should determine the dam-

ages for its breach, the necessity of procuring such award before suing for an alleged breach was not waived where plaintiff suggested to defendant that the question of damages should be taken up and settled, and defendant replied that there had been no damages incurred. (Page 611.)

4. RECOUPMENT—LIMITATION.—The right to recoup damages in an action *ex contractu* is not barred, though an independent action to enforce it would be barred, but survives as long as the plaintiff's right of action exists. (Page 612.)

5. CONTINUANCE—ALLOWING TIME FOR ARBITRATION.—Where the defendant in an action *ex contractu* is entitled to recoup whatever damages may be awarded by arbitrators to be selected by the parties, though his right to recover such damages in a separate action against the estate of the plaintiff's testator is barred, the cause will be suspended for a reasonable time to enable defendant to have the damages arbitrated. (Page 612.)

Appeal from Lee Chancery Court; *Edward D. Robertson*, Chancellor; reversed in part.

*Lem Bank* and *Norton & Hughes*, for appellant.

The tenders of cotton made in 1906 were sufficient, and interest should not be allowed. 34 Vt. 201; 39 Vt. 51. In making a tender of something other than money it is not necessary to keep it good. 12 Am. Dec. 696; 2 Kent, 508. In an action for purchase money the defendant may recoup for breaches of covenant. 134 Fed. 1. That defendant knew the timber contract was outstanding detracts nothing from the force of the covenants. 33 Ark. 503; 84 Ark. 415. When the agreement to arbitrate is collateral, resort may be had to the courts in the first instance. 137 U. S. 370; 70 N. W. 761.

*H. F. Roleson*, for appellee.

Defendant is estopped to dispute the tender to the amount of the cotton tendered. 40 N. W. 84; 27 N. W. 916; 61 Am. Dec. 141. There was no provision postponing the right of action until the finding of the arbitrators. 56 Cal. 307; 36 Am. Rep. 54; 50 N. W. 450; 9 Pet. 319; 34 Am. Dec. 74; 29 Am. Rep. 591; 100 Mass. 117; 19 Kan. 135.

BATTLE, J. J. E. Stevenson and Ebinezer Rodgers, as executors of H. P. Rodgers, deceased, instituted a suit in the Lee Chancery Court, against the Soudan Planting Company, and alleged in their complaint that their testator, H. P. Rodgers, on the first day of November, 1902, entered into a contract with

Lem Banks and one Henry Banks, since deceased, to sell to them certain lands in Lee County, known as the Soudan and Westwood plantations, and that they, in consideration thereof, agreed to deliver to H. P. Rodgers 3,500 bales of cotton, of an average weight of 500 pounds, in installments as follows: 116 bales on the 15th day of October, 116 bales on the 15th day of November, and 118 bales on the 15th day of December, of each year, beginning with the year 1903 and continuing until the 3,500 bales have been delivered; or, if the purchasers could not prepare the cotton for delivery by such dates because of the scarcity of pickers or from other unavoidable circumstances, then as soon thereafter as possible. They further alleged that the 3,500 bales of cotton were to be grown on the land sold, and delivered in the town of Marianna, in Lee County, in this State; that Lem and Henry Banks, being nonresidents of the State of Arkansas, after the contract of sale was entered into, organized the defendant corporation, the Soudan Planting Company, with a capital stock of $10,000, for the purpose of holding the title to the land and operating the plantation and the store connected therewith; that on the 30th day of January, 1903, their testator, H. P. Rodgers, executed a deed to the defendant, Soudan Planting Company, conveying to it the lands sold, and put it in possession of the same.

"Plaintiffs admitted that the deliveries were made for the first two years—1903 and 1904; but on the 15th day of October, 1905, it (appellant) offered to deliver to the plaintiffs 116 bales of the commonest and lowest grade of cotton it could purchase in the market at Marianna, Arkansas, and as a condition of such delivery required the plaintiffs to accept the same as an absolute compliance with their obligation to deliver the cotton mentioned in the contract; and, although the plaintiffs offered and agreed to take such proffered cotton at what it might amount to as a part performance of the contract of defendant, it refused to so surrender it, and so made no delivery at all. They further alleged that on the 15th day of November, 1905, the defendant again tendered a lot of the cheapest and lowest grade cotton it could purchase in the market at Marianna, which plaintiffs refused to accept, except for what it might amount to, and that the defendant permitted them to take it on such terms. And that on the 15th day of December, 1905, the defendant

again offered to deliver to the plaintiffs a lot of the commonest and cheapest cotton it could purchase in the market at Marianna, and that plaintiffs accepted the same upon condition that it was only to be a valid payment to the extent that it would comply with the defendant's contract. Plaintiffs allege that such cotton was worth one cent less per pound than the average cotton on the market at the time, and was not in full compliance with the contract of the defendant, and that the difference between the value of the two deliveries of November 15 and December 15, 1905, and the value of average cotton, would amount° to the sum of eleven hundred and seventy ($1,170) dollars. Plaintiffs further state that for the year 1906 the defendant failed and refused to deliver the cotton provided for in the contract, and refused to pay the money value thereof. That the market value of the average grade of cotton in the Marianna market on the 15th day of October, 1906, was ten and fifteen-sixteenth cents, and that the market price for average cotton on the 15th day of November, 1906, was ten and nine-sixteenth cents, and that the average grade of cotton in said market on the 15th day of December, 1906, was worth ten and three-sixteenth cents per pound. That the value of said deliveries not made in 1906 amounted in all to the sum of twenty-four thousand five hundred and fifteen and fifty-six one-hundredths ($24,515.56) dollars; that plaintiffs should have interest on said sum and on the difference between the value of the cotton delivered November 15 and December 15, 1905, and that which should have been delivered."

Plaintiffs asked for judgment against the defendant for the $25,685.56, with interest on the various items thereof from the time the same were due respectively; and that the judgment be declared a lien on the lands.

The defendant answered, and denied the allegations of the complaint as to the cotton tendered by it, and alleged that the same was average cotton of the Marianna market at the time tendered;, and denied the allegations as to value of average cotton of the Marianna market on October 15, 1906, on November 15, 1906, and on December 15, 1906.

"As matter of cross complaint, the defendant says that at the time of this purchase of the Soudan and Westwood plantations, the seller, H. P. Rodgers, represented that an outstand-

ing timber contract, granting G. A. Goerke the right to cut and remove timber from said land, contained a clause by which the said Goerke, upon notice, could be required within twelve months thereafter to take the timber from as much as 320 acres of land in any given year, and, failing, that his right to take timber from land as to which he had had notice should cease. The said seller further represented that this clause in said contract with G. A. Goerke would be available to the Soudan Planting Company, and by giving the notice it would carry out its plans for adding to the quantity of cleared land each year without being hampered by Goerke's rights in the timber. That it was the purpose of this defendant to largely increase the area of cleared land on the plantations, and that this clause was material. Thereafter it was found that said clause had, by mistake, been omitted from the contract with G. A. Goerke, and thereupon the seller of the plantations, H. P. Rodgers, and H. and L. Banks, for the Soudan Planting Company, entered into the following agreement:

" 'This agreement, between H. P. Rodgers and H. and L. Banks, acting for the Soudan Planting Company, and as themselves as prospective stockholders in said company,

" 'Witnesseth, That whereas heretofore H. P. Rodgers executed a contract of sale of his Soudan and Westwood places, in Lee County, Arkansas, containing about 6,000 acres, and at that time stated that the timber contract between him and G. A. Goerke contained a clause that allowed said Rodgers and his assigns to give notice and take land from said Goerke for the purpose of clearing it for cultivation, and upon inspection the said contract as written did not contain this clause. Now, then, in order that the purchasers may take said property in the same condition that it was represented to them to be by H. P. Rodgers, said Rodgers hereby agrees and obligates himself, his heirs and personal representatives, to at once take such necessary steps as are required to reform said contract with G. A. Goerke, so that said contract with Goerke, dated April 5, 1902, shall contain the following clause: It is expressly understood and agreed that by giving twelve months' notice to G. A. Goerke, or his assigns, H. P. Rodgers, or his assigns, may enter upon any lands embraced in this contract, not exceeding 320 acres during any one year, and cut out and deaden

the timber preparatory to cultivation.  G. A. Goerke agrees for himself and his assigns that he will take the timber from the land above mentioned within the time of said twelve months, and, after the expiration of said twelve months, then H. P. Rodgers, or his assigns, may cut and deaden timber, and the right of G. A. Goerke and his assigns to the timber on that part of the land terminates.

"'H. P. Rodgers obligates himself to have said contract reformed so as to show the change above named within two years from this date.  And, in case he should not have said contract reformed within that time, then said H. P. Rodgers agrees to pay to the Soudan Planting Company the amount of damage that said company may subsequently sustain by reason of not getting to clear said land on Westwood and Soudan places at the rate of 200 acres per year.  If the president of the Soudan Planting Company and H. P. Rodgers cannot agree on the amount of said damage, then they shall each select a man who is disinterested to act as arbitrator, and the decision of. these two men shall be final; but, if these two men cannot agree, they shall select a third disinterested party, and a decision of a majority of these arbitrators, towit, any two of them, shall be final, and H. P. Rodgers agrees to at once pay the amount of said damages assessed against him to the Soudan Planting Company.

"'H. P. Rodgers,
"'H. and L. Banks,
"'Per Lem Banks,
"'Soudan Planting Company,
"'Per Lem Banks.

"'This January 1, 1903.'"

The cross bill further alleges that H. P. Rodgers was not successful in his efforts to have said contract reformed (*Goerke* v. *Rodgers,* 75 Ark. 72), and hence became liable to defendant for such damages as it has sustained by being prevented from clearing as much as 200 acres every year for the years 1904, 1905, 1906, 1907 and 1908.  That this defendant was desirous of taking in as much as 200 acres for each of said years, and had the labor on the plantations with which to do it after crops were laid by.  That the right of G. A. Goerke to take timber expires December 31, 1908, and not until

after that time can this defendant begin the development and improvement of its said property, and by this hindrance defendant is damaged in the sum of ten thousand ($10,000) dollars, for which it prays judgment against the plaintiffs by way of counterclaim.

The plaintiffs answered the cross bill, admitting the contract of sale and purchase, and admitting the failure of H. P. Rodgers to have the Goerke contract reformed. Plaintiffs deny that the defendant has been prevented from clearing any lands that it would otherwise have cleared by reason of the failure to have said contract reformed, and they deny that the defendant has been damaged in any sum whatever. And, further answering the cross complaint, plaintiffs state that, under the terms of said contract between Rodgers and the Soudan Planting Company, it was agreed that, if the amount of damages could not be agreed upon, then the said Rodgers and the president of said Planting Company should each select a disinterested arbitrator, and that these two should select a third, and that their decision should be final and conclusive of the amount of said damages; that the plaintiffs have at all times been ready and willing to arbitrate said matter, but that there has never been any demand made upon them to arbitrate the same. And for further answer, the plaintiffs state the cause of action mentioned in the cross complaint does not arise out of the contract sued on herein, and is not connected with the subject of this action, and that the said counterclaim is based upon unliquidated damages.

The defendant, the Soudan Planting Company, filed an amendment to its cross complaint. In this amendment it sets up the covenants of warranty in the deed made to it by H. P. Rodgers, and for a breach of covenant it alleges the outstanding timber contract in Goerke. It alleges that the value of the timber sold Goerke by Rodgers was $30,000, which is three-tenths of the value of the entire property, and that defendant should recoup in the sum of $30,000.

As a further breach, it alleges that, by reason of the Goerke timber contract, it was never given the entire possession of the property purchased.

The plaintiffs answered the amendment to the cross complaint. In this answer they admit the warranty, but say that

the Soudan Planting Company and H. and L. Banks, when they bought the property, knew that the timber contract was outstanding.

"Plaintiffs further state that, after the deed was executed to the Soudan Planting Company, H. P. Rodgers assigned and transferred to it the notes received from G. A. Goerke under his contract, and that the Soudan Planting Company subsequently collected them, and that for this reason the Soudan Planting Company is estopped to sue upon the warranty. Plaintiffs deny that there is a breach of warranty in any respect, and for further answer they say that the deed of warranty was executed in January, 1903, and if there was a breach of the covenants that the right of action therefor is barred by the five-year statute of limitations."

The agreement to sell lands and other property and for other purposes, entered into by and between H. P. Rodgers, of the first part, and Henry Banks and Lem Banks, of the second part, on the first day of November, 1902, was adduced and read as evidence in the hearing of this cause. Among other things it was stipulated in the agreement as follows: "As there are timber contracts in force on the lands, it is understood and agreed that the timber cut and banked off sections 3 and 4, 2 N., 4 E., up to January 1, 1903, and the note for timber due January 1, 1903, are to go to the party of the first part, and all other timber, and the remaining notes, are to go to the parties of the second part, and the first party is duly to assign said notes; the notes assigned being three (3), and due January 1, 1904, 1905 and 1906, and each for one thousand and sixty ($1,060) dollars."

The deed executed by Rodgers, the testator, on the 30th day of January, 1903, to the defendant, Soudan Planting Company, in pursuance of his agreement to sell, contains the following covenants with the defendant: "And the said H. P. Rodgers and his wife, Alice E. Rodgers, do jointly and severally · covenant for themselves, their representatives, with the said Soudan Planting Company, its successors and assigns, that H. P. Rodgers is lawfully seized in fee simple of the land hereinbefore described; that said land is free from all incumbrances whatsoever, except State and county taxes for the year 1902, which are assumed by the party of the second part; that they, the

parties of the first part, have a good right to sell and convey said land; and that they will, and their executors and administrators shall, forever warrant and defend the title thereto to the said Soudan Planting Company, its successors and assigns, against all lawful claims whatsover."

The grantor, H. P. Rodgers, retained a lien on the lands to secure the delivery of the cotton which the Soudan Planting Company agreed to deliver in payment for the same.

A stipulation of the parties as to the facts was read as evidence in the hearing of this cause, which in part is as follows: "In this case it is agreed that the contract between the Soudan Planting Company and H. P. Rodgers regarding the timber contract with G. A. Goerke was entered into on the 1st day of January, 1903, a few days before the execution of a deed from H. P. Rodgers to the Soudan Planting Company, which was on the — day of January, 1903. It is further agreed that Henry Banks and Lem Banks, the officers of the Soudan Planting Company, knew and were advised of the said timber contract at the time of the execution of the deed from H. P. Rodgers to the Soudan Planting Company, and the said deed was prepared by the said Lem Banks, at the suggestion of H. P. Rodgers, and submitted to H. P. Rodgers, who made some changes, after which it was recopied, and it was prepared by Lem Banks, as the attorney of H. P. Rodgers. It is further agreed that, immediately after the execution of the deed from H. P. Rodgers to the Soudan Planting Company, he transferred, without further considerations than those mentioned in said deed, the notes of Goerke and the Cottonwood Lumber Company for the purchase of timber of said land, and the Soudan Planting Company accepted the same, and afterwards collected all of said notes as they became due."

H. P. Rodgers died in June, 1905, leaving a last will and testament. The plaintiffs are his executors. Henry Banks has also departed this life.

The 350 bales of cotton due and owing H. P. Rodgers on the sale of lands for each of the years 1903 and 1904 have been paid, and the cotton due and payable on the 15th days of November and December of 1905, have been paid to his executors. The 116 bales due on the 15th day of October, 1905, and the 350 bales due in the year 1906 have not been paid. Cotton was

tendered to the executors of Rodgers as the amount due on the 15th of October and. in the year 1906, but they refused to accept it as such, but offered to receive it as so much paid. The cotton tendered, except a small part, was of the average cotton sold in the Marianna market. After the refusal to accept it the defendant sold it and converted the proceeds to its own use. No other tender was made.

No effort was made to secure an arbitration of the damages which the Soudan Planting Company sustained by reason of the failure of Rodgers to have the contract between him and G. A. Goerke reformed as he agreed to do. Lem Banks, the president of the Planting Company, testified as follows:

"I cannot say that a distinct, specific offer of arbitration has been made, but I can say, however, that to either the executors or their counsel (it was suggested that) the question of damages under this bond should be taken up and settled, and the reply was that they did not think there had been any damage. After that I considered that there was no occasion for other settlement.'

A decree in this cause was rendered on the 28th day of January, 1909. By this decree the plaintiff's suit was dismissed as to Lem Banks.

"The court found that the defendant, the Soudan Planting Company, was required to deliver to the plaintiffs the amount of 350 bales of cotton per annum; that on the 15th day of October, 1905, the 15th day of October, 1906, the 15th day of November, 1906, and the 15th day of December, 1906, its offers of deliveries of cotton were not in compliance and conformity with the same, and were not absolute and unconditional tenders. The court found further that the 116 bales conditionally tendered on the 15th day of October, 1905, were of the value of six thousand and seventeen ($6,017) dollars, and were sufficient in value to comply with the contract; and that on the 15th day of October, 1906, the 116 bales of cotton then due, and which were conditionally offered, were of the value of sixty-two hundred and sixty-four ($6,264) dollars; that on the 15th day of November, 1906, a total of 118 bales of cotton which were conditionally offered—six thousand and eighty-eight and eighty-hundredths ($6,088.80) dollars, that on the 15th day of December, 1906, the value of the 116 bales of cotton condition-

ally offered, and that should have been delivered, was six thousand and sixty-one ($6,061) dollars.

"The court further found that the offers of cotton were not unconditional, and were not legal tenders, and that the plaintiffs are entitled to interest at the rate of six per cent. (6 per cent.) per annum upon each of the amounts aforesaid. The court further found that the agreement between H. P. Rodgers and the Soudan Planting Company with regard to the damages for failing to reform the Goerke contract contemplates that such matter should be submitted to arbitration, and that there has been no offer to arbitrate made by the Soudan Planting Company, and it is therefore decreed that the cross complaint to such items be (dismissed). The court further found that, by reason of the acceptance by the Soudan Planting Company of payment of the Goerke notes given for the timber, it is estopped to sue upon the warranty, and further found that the right of action upon the warranty is barred by the five years statute of limitations."

And the court rendered a decree in accordance with its findings. The defendant appealed.

Appellant complains because the court found that it should pay to plaintiffs the value of the cotton tendered. They were entitled to recover the amount of cotton due them of the value of the average cotton in the Marianna market at the time it should have been delivered. *Soudan Planting Company* v. *Stevenson,* 83 Ark. 163. The defendant admitted that the cotton tendered was of such value. The evidence as to the market value of such cotton in Marianna at the time it was due is conflicting. According to the weight of it, as we understand it, the amount of the cotton due appellees, according to its market value at such time and place, was worth fully as much as the judgment they recovered for the same. The tender made was no bar to such judgment; for it (appellant) sold the cotton, and converted the proceeds to its own use and made no other tender, and the tender made was no longer available and ceased to be of any effect.

Appellant, in its cross complaint, sought to recover damages incurred by the failure of Rodgers to have the Goerke contract reformed according to agreement. But was it not precluded, by its agreement, from suing for them before an offer or effort

to arbitrate was made? In *Hamilton* v. *Home Insurance Co.,* 137 U. S. 370, 385, Mr. Justice GRAY, speaking for the court, said: "A provision, in a contract for the payment of money upon a contingency, that the amount to be paid shall be submitted to arbitrators, whose award shall be final as to that amount but shall not determine the general question of liability, is undoubtedly valid. If the contract further provides that no action upon it shall be maintained until after such an award, then, as was adjudged in *Hamilton* v. *Liverpool, London & Globe Ins. Co.* (136 U. S. 242), above cited, and in many cases therein referred to, the award is a condition precedent to the right of action. But when no such condition is expressed in the contract, or necessarily to be implied from its terms, it is equally well settled that the agreement for submitting the amount to arbitration is collateral and independent; and that a breach of this agreement, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract." See authorities cited.

In the contract before us it is stipulated as follows: "H. P. Rodgers obligates himself to have said contract reformed so as to show the change above named within two years from this date. And, in case he should not have said contract reformed within that time, then said H. P. Rodgers agrees to pay to the Soudan Planting Company the amount of damage that said company may subsequently sustain by reason of not getting to clear said land on Westwood and Soudan places at the rate of 200 acres per year. If the president of the Soudan Planting Company and H. P. Rodgers cannot agree on the amount of said damage, then they shall each select a man who is disinterested to act as arbitrator, and the decision of these two men shall be final; but if these two men cannot agree they shall select a third disinterested party, and a decision of a majority of these arbitrators, towit, any two of them, shall be final, and H. P. Rodgers agrees to at once pay the amount of said damages assessed against him to the Soudan Planting Company."

Under this contract it is the absolute duty of the parties to select arbitrators when they disagree as to the damages mentioned. The arbitrators, when selected, determine only one question, and that is the amount of the damages, and their decision is final. Rodgers agreed to carry it into effect by pay-

ing the damages thereby assessed against him at once. Such an award, when rendered, is the limit of his liability for such damages, and is a condition precedent which must be rendered, unless waived or prevented by one or both of the parties, before an action can be brought against him for the damages. *Holmes* v. *Richet,* 56 Cal. 307.

Appellant has made no offer or effort to arbitrate the damages in question. The suggestion to the appellees that the question of damages should be taken up and settled was no offer to arbitrate, and the reply that they did not think that there has been any damages was not a refusal to arbitrate. The arbitration was agreed upon for the purpose of settling disagreements of the parties as to such damages.

In appellant's cross complaint it is alleged that H. P. Rodgers executed a deed to the Soudan Planting Company on the 30th day of January, 1903, and thereby conveyed to it (the grantee) the lands mentioned in appellee's complaint in this suit, and known as the Westwood and Soudan plantations, and covenanted with it (appellant) that the lands were free from all incumbrances, and alleged that the same were incumbered by a written contract made and entered into by H. P. Rodgers and G. A. Goerke on the fifth day of April, 1902, in and by which Rodgers sold and conveyed to Goerke the principal part of the timber on the lands, and allowed him until the 31st day of December, 1906, to cut and remove the same, and granted to him certain roadways for that purpose. The facts are: In the contract made on the second day of November, 1902, by Rodgers, of the first part, and H. and L. Banks, who represented the Soudan Planting Company, of the second part, the party of the first part agreed to sell the lands which afterwards, to-wit, on the 30th day of January, 1903, were conveyed by him to the said company, and the parties referred to the contract with Goerke for the sale of timber and stipulated as follows: "As there are timber contracts in force on said lands, it is understood and agreed that the timber cut and banked off sections three and four, 2 N., 4 E., up to January 1, 1903, is to go to the party of the first part (Rodgers), and all other timber and the remaining notes are to go to the party of the second part, and the first party is duly to assign said notes; the notes assigned being three, and due January 1, 1904, 1905 and 1906,

and each for $1,060." After this, on the first day of January, 1903, the agreement to have the contract with Goerke reformed, and to pay damages upon failure to do so, was made. After the deed to the Soudan Planting Company was executed, Rodgers transferred to the company, without further considerations than those mentioned in the deed, the notes of Goerke for the purchase of the timber on the land, and the company accepted them and afterwards collected them as they became due. All these facts prove that the timber notes of Goerke were assigned to the company, and the agreement to reform the contract with Goerke was made and accepted as an entire satisfaction of the warranty deed, so far as it was affected by the timber contract. What other purpose could they subserve? We see none. Having such purpose and effect, the timber contract of Goerke was not an incumbrance, within the meaning of the covenants in the deed. The company is not entitled to a double compensation on account of the same.

The time for probating claims against the estate of Rodgers has passed. Unless the Soudan Planting Company can recoup the damages sustained by it on account of the failure to reform the contract with Goerke against the amount the appellees are entitled to recover, it may lose the same. To prevent such consequences, so much of the decree of the chancery court as dismissed that part of appellant's cross complaint that is based on a claim for damages on account of the failure to reform the contract with Goerke is set aside, and the proceedings in the cause are suspended for a reasonable time to be fixed by the court for the arbitration of such damages according to the agreement of the parties and the law in such cases, or until the appellees shall refuse or fail to do so within such reasonable time, in which event the court shall ascertain the damages, if any, in the manner prescribed by law. (As to the right to recoup these damages against the plaintiff's claim, although the right to recover them in a separate action is barred, see *Williams* v. *Neeley*, 134 Fed. 1, 12; *Beecher* v. *Baldwin* (Conn.), 12 Atl. 401, 404). In other respects the decree is affirmed. The cause is remanded with directions to the court to recoup such damages as the appellant may recover, as aforesaid, against the payment of appellees, and for proceedings consistent with this opinion.