## SHANFEROKE COAL & SUPPLY CORPORATION OF DELAWARE v. WESTCHESTER SERVICE CORPORATION.

### No. 370.

Circuit Court of Appeals, Second Circuit.
April 16, 1934.

Ehrich, Royall, Wheeler & Walter, of New York City (Ernest E. Wheeler, of New York City, of counsel), for appellant.

Moos, Nathan, Imbrey & Levine, of New York City (Alfred B. Nathan and Benjamin Lewis, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, a citizen of Delaware, sued the defendant, a citizen of New York, in the District Court, alleging that the plaintiff was the sole selling agent for the Hudson Coal Company; and that in January, 1931, the defendant promised to buy, and the plaintiff to sell, 75,000 tons of Hudson Company coal spread over five years "in as nearly equal monthly installments as practicable." That since December 1, 1931, the defendant had refused to order 1,250 tons a month, had taken in all up to March 1, 1933, only 16,173 tons, had notified the plaintiff that it would not "order, accept or pay for coal as provided in the agreement," and had thereby repudiated it. That there remained for delivery 52,309 tons, the commissions upon the sale of which the plaintiff had lost and now claimed in the action. The defendant answered, denying a number of the allegations and setting up as a defence a clause in the contract which provided for arbitration "in case any dispute should arise between the Buyer and the Seller as to the performance of any of the terms of this agreement. * * * In case for any reason any such

arbitration shall fail to proceed to a final award, either party may apply to the Supreme Court of the State of New York for an order compelling the specific performance of this arbitration agreement in accordance with the arbitration laws of the State of New York." Thereupon the defendant moved to stay the action under section 3 of the United States Arbitration Act, title 9, § 3, U. S. Code (9 USCA § 3). In its affidavits it alleged that it had always been willing to arbitrate the dispute but that the plaintiff had refused to accept an order for coal, and had without cause declared the contract at an end. The plaintiff in its answering affidavits alleged that it had repeatedly tried to compel the defendant to live up to the contract, but that it had refused on the ground that it could get cheaper coal elsewhere. That the plaintiff had been willing to accept the last order on condition that its acceptance should not affect its rights, but the defendant was unwilling to agree to this, demanding a reduction in the price; that therefore there was no genuine dispute between the parties and nothing to arbitrate. The judge denied the motion; he thought that the arbitration clause confined the parties to an arbitration in the Supreme Court of New York, and that a stay would involve superintendence over such a proceeding, which the District Court was unfitted to undertake.

 We do not find it necessary to decide whether the arbitration clause at bar was limited to a proceeding in the state court. While it is certainly possible to read the language only as an addition, redundant because already provided by law, and as not intended to prevent arbitration elsewhere, we are content to treat it as exclusive, as the judge did. The District Court could not in that event enforce the clause specifically. California Prune & Apricot Growers' Association v. Catz American Co., 60 F.(2d) 788, 85 A. L. R. 1117 (C. C. A. 9). Without the United States Arbitration Act we may assume that it could not even stay the action until arbitration was had in the state court, The Atlanten, 252 U. S. 313, 40 S. Ct. 332, 64 L. Ed. 586; though Pacific Indemnity Co. v. Insurance Co. of North America, 25 F. (2d) 930 (C. C. A. 9), may be read to the contrary. However, section 3 now specifically provides for a stay, and we have only to decide whether it covers the situation; that is, whether the arbitration must be in a federal court. The decisions in the District Courts are divided. The Silverbrook (D. C.) 18 F.(2d) 144, The Fredensbro (D. C.) 18

F.(2d) 983, and The Beechwood (D. C.) 35 F.(2d) 41, take the view of the judge below; Danielsen v. Entre Rios Rys. Co. (D. C.) 22 F.(2d) 326, and The Volsinio (D. C.) 32 F. (2d) 357 (semble), are contra. So too is In re Inter-Ocean Food Products, Inc., v. York Mercantile Co., 206 App. Div. 426, 201 N. Y. S. 536. Under a very similar act in England, it is established law that an agreement to submit to a foreign court justifies the stay of an action brought on the contract elsewhere. Law v. Garrett, L. R. 8 Ch. Div. 26 (C. A.); Austrian, etc., Co. v. Gresham, etc., Society, L. R. (1903) 1 K. B. 249; Kirchner v. Graban (1909), 1 Ch. Div. 413; The Cap Blanco (1913), Pr. Div. 130. California Prune & Apricot Growers' Association v. Catz American Co., supra (60 F.(2d) 788, 85 A. L. R. 1117), merely decided, as we have said, that a federal District Court would not specifically enforce an arbitration clause under a local state statute. In Lappe v. Wilcox (D. C.) 14 F.(2d) 861, a stay was denied under the New York act (Consol. Laws, c. 72), in the case of a contract made before the federal act was passed. We can see no reason for a limited construction, and conclude that section 3 authorizes a stay even though the arbitration must take place beyond the jurisdiction of the court. In The Volsinio, supra, (D. C.) 32 F.(2d) 357, the actual ruling was that although this was true, the section was inapplicable, unless the contract was itself "maritime," or "involved commerce," as defined by section 1 of the act (9 USCA § 1). We are not clear that this is true; section 2 defines those contracts which it makes "valid, irrevocable and enforceable," and no doubt such alone are within section 4. Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 62 F.(2d) 1004 (C. C. A. 2). But it does not follow that section 3 is so circumscribed; the language is: "If any suit * * * be brought * * * upon any issue referable to arbitration under an agreement * * * for such arbitration." "Such arbitration" may very well refer back to "any issue referable to arbitration," and not to section 2. The change in language from section 5 of the New York Arbitration Act, from which, in general, section 3 of the federal act was copied, was plainly deliberate. In the New York act the clause had read, "under a contract * * * described in section two," and section 2 of that act was the analogue of section 2 of the federal act (9 USCA § 2). "Such arbitration" was very awkward as an equivalent for all that is comprised in section 2 of the federal act, and suggests a broader intent.

It is not necessary, however, to decide the point here, because the contract "involved commerce" as defined by section 1. The seller, the plaintiff, was to ship the coal on cars f.o.b. Pennsylvania, consigned at the buyer's directions, and, since the buyer's place of business was Yonkers, the "commerce" concerned was between the states.

▊ Again, we scarcely think sufficient the objection, which the judge thought vital; that is, that a stay may involve some supervision over the arbitration. This was raised only to be overruled in Law v. Garrett, supra, L. R. 8 Ch. Div. 26, with which we agree. The defendant's right to a stay presupposes his freedom from "default" at the outset, and perhaps also that he shall never default in performance. Thus it may from time to time be necessary for the court where the action is pending to consider how far he has continued to perform. Even so, the superintendence involved is not beyond the compass of a court of equity; it does not require detailed supervision, like the building of a house, or the manufacture of some especial machine, which is likely to demand repeated recourse to the court.

▊ The plaintiff further objects that the defendant is "in default in proceeding with such arbitration," within the meaning of section 3. True, it has not named its arbitrator, but in its answer and moving affidavits has merely expressed its willingness to submit to arbitration. This appears to us enough. It was the plaintiff who declared the contract to be at an end; and with that the defendant was contented. If the plaintiff meant to proceed further and enforce a claim for damages, the initiative rested upon it; it should have named the first arbitrator. If it did not but sued instead, it was itself the party who fell "in default in proceeding with such arbitration," not the defendant. Under the English act, which is more stringent, a mere affidavit of willingness is enough. Piercy v. Young, L. R. 14 Ch. D. 200, 209. Nor are we impressed with the notion that there was nothing to arbitrate. We may assume arguendo, though we do not mean so to decide, that if a party repudiates a contract in toto, he can neither insist on arbitration, nor compel the opposite party to do so. Jureidini v. National British Millers Ins. Co. (1915) A. C. 499; Aktieselskabet v. Rederiaktiebolaget Atlanten (D. C.) 232 F. 403. Here, though the defendant failed to perform, that was not a repudiation, and the arbitration clause was

for the very purpose of adjusting breaches. We need not say that there can never be a breach so plain that the promisee may not have summary judgment, even in the face of an arbitration clause (In re Wenger & Co. v. Propper Silk Hosiery Mills, 239 N. Y. 199, 146 N. E. 203); but the plaintiff's own right to repudiate was not so clear as that. We must take the defendant's version on the issue; it says that in December, 1932, it ordered 390 tons of coal, and that the plaintiff accepted the orders and filled them. That in January it again ordered 250 tons more, which the plaintiff refused to deliver except on condition that its rights should remain unaffected. That the defendant agreed to this, but changed its mind later and cancelled the contract. If all this be true, it is apparent that the plaintiff's right to call off the whole contract and sue for damages was open to debate. Landes v. Kloptock, 252 F. 89 (C. C. A. 2); Restatement of Contracts, § 317 (2); Comment on Subsection (2); Illustration 7. There was therefore something to arbitrate quite aside from the liquidation of damages. Indeed this alone would be enough, if the merits were otherwise conceded. It is true that the complaint asks for commissions and the plaintiff insists that the liquidation of these requires only an arithmetical computation; but the contract reads as a straight sale, and again it is at least debatable how damages shall be calculated. It is quite true that before any of the modern statutes, provisions in contracts for the arbitration of incidental issues were treated as valid and as conditions precedent. At times it has been thought that the statutes do not cover such arbitrations (In re American Insurance Co., 208 App. Div. 168, 203 N. Y. S. 206); though the question is perhaps open in New York (In re 176 and 178 E. Main Street, 238 App. Div. 248, 264 N. Y. S. 717). But even if this be true, a clause of general arbitration does not cease to be within the statute when the dispute narrows down to damages alone. General Footwear Co. v. A. C. Lawrence Leather Co., 252 N. Y. 577, 170 N. E. 149; Marchant v. Mead-Morrison Co., 252 N. Y. 284, 298, 299, 169 N. E. 386. If the clause is general in form, it makes no difference what may come up under it.

The stay should be granted, but the District Court will be free without the leave of this court to vacate it at any time, should it appear that the defendant is in default in proceeding with the arbitration.

Order reversed; cause remanded.