**W. R. GRIMSHAW CO. v. NAZARETH LITERARY & BENEVOLENT INSTITUTION.**

Civ. A. No. 2499.

United States District Court
E. D. Arkansas, W. D.

May 23, 1953.

Owens, Ehrman & McHaney, James McHaney, Little Rock, Ark., Smith & Rogers, Tulsa, Okl., for plaintiff.

Sherrill, Gentry & Bonner, Thomas J. Bonner, Little Rock, Ark., for defendant.

LEMLEY, Chief Judge.

This cause comes on for hearing upon the cross motions of the respective parties for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which motions have been submitted upon written briefs.

The plaintiff, an Oklahoma corporation, commenced this action against the defendant, which is described in the complaint as being "a benevolent association organized and existing under the laws of the State of Kentucky, * * * and * * * a citizen of that State" and as being qualified to do business in Arkansas, for the purpose of securing a declaratory judgment to the effect that under the terms of a certain construction contract, including specifications, entered into between it and the defendant in connection with the construction of the new St. Vincent's Infirmary at Little Rock, Arkansas, it is "entitled to arbitration" of a claim against the defendant for certain additional compensation for the excavation of certain material on the hospital site. Jurisdiction of this Court is predicated upon diversity of citizenship between the parties and the existence of the requisite jurisdictional amount.

The complaint alleges that on June 28, 1951 the parties entered into a contract under the terms of which the plaintiff, for certain considerations, was required to furnish all materials and perform all labor, including excavation work, for the complete construction of the new St. Vincent's Infirmary, according to plans and specifications prepared by defendant's architect, which plans and specifications were made a part of the contract between the parties; that the contract provided that the material at the job site which was to be excavated by the plaintiff was assumed to be "earth" and subject to being removed by a power shovel; that the contract further provided that the plaintiff should receive additional compensation for the excavation of "rock", and that "rock" was defined as being "any stone or boulders that cannot be removed by a power shovel, ½ cu. yd. bucket capacity, without use of drills or explosives." It is further alleged that during the course of the excavation work performed by the plaintiff under the contract substantial quantities of "rock" were encountered, which the plaintiff could not remove with a power shovel having a ½ cubic yard bucket capacity without the use of drills or explosives, and that the plaintiff is entitled to additional compensation for the removal of such "rock". Plaintiff further alleges that, pursuant to the terms of the contract, demand was made upon the defendant, through its architect, for additional compensation for the alleged rock excavation, but that the defendant and its architect contend that the material excavated by the plaintiff "was not rock even though it could not be removed by a power shovel, ½ cubic yard bucket capacity, without the use of drills or explosives," and that plaintiff's claim for additional compensation was rejected.

Plaintiff further alleges that the specifications included in the contract between the parties provided for the arbitration of disputes, and it attached to its complaint a photostatic copy of those portions of the specifications dealing with arbitration. Insofar as here pertinent, the arbitration provisions are as follows:

"7. *Arbitration.* (a) It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects and that all findings of fact by the arbitrators under this agreement shall be conclusive and binding on both parties. It is further mutually agreed that the decision of the arbitrators shall be a prior condition to any right of legal action which either party to the contract may have against the other.

\*    \*    \*.    \*    \*    \*

"(c) Demand for arbitration in connection with any dispute shall be filed in writing with the Architect and with the other party to the contract. Any demand for arbitration shall be made within thirty days after the dispute has arisen if practicable, but in any event, no demand for arbitration shall be made after the date of final payment except in the case of a dispute arising in connection with any guarantee provisions of the contract documents.

"(d) The arbitrators hereunder shall have authority to award to the party whose contentions are approved as being in conformity with contract requirements such sum as they, or a majority of them consider is proper to compensate the injured party for any loss in connection with the proceedings and if they find that the arbitration proceedings were demanded without reasonable cause, they may in addition award the injured party damages for delay, unless precluded by agreement between the contracting parties before arbitration. The arbitrators shall set their own compensation and determine the total amount of such compensation and other costs and expenses of the proceedings incurred by them, unless otherwise agreed prior to the proceedings, and shall assess the total of the costs of the proceedings upon either or both parties to the contract in such proportions as they or a majority of them may approve."

It is next alleged in the complaint that the plaintiff made due demand for arbitration, but that the defendant has refused to arbitrate; it is further alleged that an actual controversy has arisen and now exists between plaintiff and defendant with respect to the right of the plaintiff to arbitration of its claim for additional compensation for rock excavation, and that the plaintiff "is in urgent need of declaratory relief to define its rights and other legal relations with defendant under said specifications and contract." The prayer of the original complaint is for a "judgment declaring that, under the contract and specifications aforesaid, plaintiff is entitled to arbitration of its claim to additional compensation for rock excavation; and plaintiff prays for such other and further relief as may be just."

In its answer to the original complaint the defendant admitted the execution of the contract, that the plaintiff had made demand for payment of additional compensation for rock excavation, which demand had been denied, that the plaintiff had demanded arbitration, and that the "defendant has declined to arbitrate said demands." It was further admitted that "a controversy exists between plaintiff and defendant." The answer then goes on to set up certain defenses relating to the merits of the plaintiff's claim for additional compensation, and concludes with a prayer for a dismissal of the complaint.

Shortly after the defendant had filed its answer, the plaintiff filed a "Motion For Judgment on the Pleadings Or To Strike Defenses," and a memorandum brief in connection therewith as required by Local Rule 8 of this Court. In support of this motion the plaintiff took the position that the defendant had admitted execution of

the contract, the existence of a controversy between the parties, the plaintiff's demand for arbitration, and its own refusal to arbitrate; that the defendant did not dispute plaintiff's right to arbitration under the contract; and that the allegations of the answer to the effect that plaintiff was not entitled to additional compensation went to the merits of the plaintiff's claim and not to the latter's right to have said claim arbitrated, and that said allegations were as to matters properly to be considered by the arbitrators but not by the Court in the instant proceeding.

Thereafter the defendant filed a response to the plaintiff's motion and also filed a cross motion for judgment on the pleadings. In its response and cross motion the defendant alleged that the complaint showed on its face that the plaintiff was attempting to enforce by declaratory judgment procedure "an executory agreement for the arbitration of all disputes;" that the defendant had revoked the arbitration clause in the contract and had declined to arbitrate; that "such clause is void and revocable under the laws of the State of Arkansas and that the law of Arkansas is binding on this Court in this instance." It was further alleged that even if the arbitration clause was not revocable, nevertheless "such executory agreements are not enforceable by either the courts of the State of Arkansas or the courts of the United States; that the arbitration clause in question ousts the courts' jurisdiction; that the Federal Declaratory Judgments Act, 28 U.S.C.A. §§ 2201–2202 was intended to supply a remedy where the courts of the United States formerly were without power to act, and was not intended to supply remedies indirectly by declaratory judgment which the courts of the United States had power to give before the Act, but refused to give;" it was further alleged that declaratory judgments "are granted only where the controversy between the parties will be terminated by the judgment;" that none of the controversies between the parties would be terminated by a declaratory judgment; "that arbitration of the controversies and suit on the award would necessarily follow before the disputes would be settled; that an admitted remedy of law exists whereby the plaintiff's claim for damages, if any, can be adjudicated." Defendant filed a memorandum brief in support of its response and cross motion, and the plaintiff thereafter filed a reply brief.

Subsequent to the filing of the briefs just referred to, the Court entered upon a consideration of the case and came to the conclusion that the prayer of the complaint, which has been quoted above, was ambiguous in that the Court could not determine whether the plaintiff was simply seeking a declaratory judgment to the effect that the contract contained a provision for arbitration, which was admitted, or whether it was seeking a declaratory judgment to the effect that it was entitled to specific performance of the arbitration agreement, or whether it sought a declaration merely that the agreement was valid and irrevocable. In a joint letter to counsel, dated March 12, 1953, the Court called attention to this apparent ambiguity in the prayer and suggested "that the plaintiff amend its complaint so as to set out specifically what it means when it asks for a declaratory judgment to the effect that 'it is entitled to arbitration' and to ask for any other specific relief to which it feels itself entitled."

After receipt of this letter, the plaintiff filed an amendment to its complaint whereby in lieu of the prayer of the original complaint it substituted the following prayer:

"Wherefore, plaintiff prays that the Court enter a judgment declaring that arbitration provision in the contract and specifications aforesaid is valid and irrevocable and that plaintiff is entitled, under said contract and specifications, to arbitration of its claim to additional compensation for rock excavation; and plaintiff prays for such other and further relief as may be just."

Counsel for plaintiff filed a supplemental brief in connection with this amendment, in which brief it was said: "We believe that a declaratory judgment that the clause is valid and irrevocable is as far as the court need go, and is as much relief as the plain-

tiff need request at this time"; further on in said brief, however, counsel stated: "If the Court feels constrained to deny the relief requested, we would ask leave to amend further to pray for specific performance."

Upon consideration of this amendment and the brief in support thereof, and upon noting the statements in the brief which have been quoted, the Court again and on March 23, 1953 wrote local counsel for the plaintiff advising him that it appeared to the Court that if the plaintiff desired to file any additional amendment, it should do so, and five additional days were allowed for that purpose. Counsel's attention was called to the provisions of Rules 8(a) and 8(e) of the Federal Rules of Civil Procedure permitting the joinder of claims and permitting alternative and hypothetical pleading. Copies of this letter were mailed to counsel for the defendant and to the Clerk.

Thereafter the plaintiff filed another amendment to its complaint wherein, after re-iterating its prayer for declaratory relief as set forth in its first amendment, it set up an alternative prayer for specific performance of the arbitration provisions of the contract. Counsel for plaintiff likewise filed an addendum to the brief filed in connection with the original amendment. In the second amendment to its complaint plaintiff based its claim for specific performance upon the Court's "inherent equity jurisdiction and/or * * * Section 4 of the United States Arbitration Act, 9 U.S. C.A. § 4."

In its answer to these two amendments the defendant re-affirmed its assertion that the arbitration clause in question was revocable; it further re-affirmed its position that the right to revoke is a substantive right under the laws of the State of Arkansas, by which this Court is bound. Answering further, the defendant denied the applicability of Section 4 of the United States Arbitration Act, and denied that the plaintiff was entitled to specific performance. In its prayer the defendant stated: "* * * the defendant prays that the complaint, with amendments thereto, be dismissed; and that, the pleadings and briefs herein having shown the arbitration clause to have been revoked, the defendant be given judgment on the pleadings." In support of this pleading counsel for the defendant filed a supplemental brief.

A study of the several pleadings in the case and of the numerous briefs which have been filed convinces us that the controversy between the parties with respect to the plaintiff's asserted right to arbitration involves purely legal questions, and that the case can be disposed of upon the pending motions.

In passing upon the motions of the respective parties we are confronted at the outset by the conflict between the parties as to what law governs the disposition of this case. As heretofore indicated, the defendant contends that the rights of the parties must be determined by the law of Arkansas, whereas the plaintiff argues that Section 4 of the United States Arbitration Act is applicable, or, if not, that this Court is still not bound by the law of Arkansas but is free to follow its own views.

■ This dispute as to the governing law actually involves several questions, but we do not find it necessary to decide them all. Whether or not a declaratory judgment, considered as a federal procedural device created by federal statute, should be entered seems so obviously a federal question that no further discussion of it is required. It is necessary to decide whether or not Section 4 of the United States Arbitration Act is applicable here; but, aside from the question of the applicability of said section, we do not consider it to be of controlling importance whether the questions of the validity and irrevocability of the arbitration clause involved in this case and whether or not the plaintiff is entitled to specific performance thereof are to be determined by the law of Arkansas or by the so-called "general law". This is true because Arkansas has no statute dealing with executory agreements to arbitrate, and, as will be hereinafter pointed out, it does not appear that the common law of Arkansas as to the validity, irrevocability, and enforceability of such agreements differs in any material respect from the common law rule generally prevailing elsewhere.

The United States Arbitration Act, 9 U.S.C.A. §§ 1–14, consists of fourteen sections, of which only the first four need be considered here. Section 1 consists of the definition of a number of terms, including "maritime transactions" and "commerce", and of certain exceptions not here relevant; we are not here concerned with "maritime transactions", but it is to be pointed out that "commerce" is defined as being "commerce among the several States or with foreign nations * * *." Section 2 provides that: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contracts." Section 3 provides that if any suit or proceeding is brought in any of the courts of the United States upon any issue referable to arbitration under a written agreement for such arbitration, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." Section 4, insofar as here relevant, provides that: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * *" It will be noted that in neither Section 3 nor Section 4 is there any specific reference to Section 2.

■ There can be little question that if Section 4 of the Act is read literally, and standing alone, it gives to a federal court jurisdiction to compel specific performance of an executory agreement to arbitrate, regardless of whether or not the agreement is contained in a "maritime transaction" or in a contract involving interstate or foreign commerce, provided that other jurisdictional requisites, such as diversity of citizenship and jurisdictional amount, are present. From our consideration of the decisions in which the courts have had occasion to consider the matter, however, we are satisfied that Section 4 cannot be read alone, but must be read in connection with Section 2, and that the only arbitration clauses which are specifically enforceable under Section 4 are those validated and made irrevocable and enforceable by Section 2. These decisions fall generally into two categories: First, cases in which Section 4 has been directly involved, and, second, cases in which the stay provisions of Section 3 have been invoked and the courts have had occasion to compare said section with Section 4:

In Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc., 2 Cir., 62 F.2d 1004, which was a proceeding under Section 4, the Court took the view that before Section 4 is applicable, there must be diversity of citizenship between the parties, and the contract containing the arbitration clause must involve interstate or foreign commerce. In the course of the opinion it was said: "A citizen of New Jersey may enforce arbitration against a citizen of New York upon a contract of sale which requires him to ship * * * goods from Newark to Manhattan, but not upon one where they are to go from Manhattan to the Bronx. Conversely, a citizen of New York may not come to the District Court to enforce arbitration against another citizen of that state, though the goods must be shipped across a state line. In the case at bar both conditions were fulfilled; the parties were citizens of different states, and performance involved an interstate shipment." 62 F.2d at page 1006.

In re Cold Metal Process Co., D.C.Pa., 9 F.Supp. 992, was an action to compel specific performance of an executory agreement to arbitrate, brought pursuant to Section 4 of the United States Arbitration Act, and the Court held that Section 4 was limited by Section 2, and that since the contract containing the arbitration clause did not involve interstate commerce the action must be dismissed.

In San Carlo Opera Co. v. Conley, D.C. N.Y., 72 F.Supp. 825, the Court said: "* * * Section 4 of the Arbitration Act empowers the courts to compel arbitration in certain types of cases. An examination of the authorities reveals that Section 4, unlike Section 3, is limited to certain defined types of contracts or transactions which are declared 'enforceable' under § 2 of the Act. * * * It has been held that only those types of contracts described in Section 2 come within the scope of Section 4, thus attaching to Section 4 the limitation of maritime transactions or contracts relating to interstate or foreign commerce." 72 F.Supp. at pages 829–830. Further on in the opinion the Court, after determining that the contract involved in the case before it did not evidence a transaction involving interstate or foreign commerce, said: "Since the contract does not evidence a transaction arising out of interstate or foreign commerce as set forth in Section 2 * * * this Court would have no authority to compel arbitration under Section 4 or to appoint arbitrators in furtherance of the arbitration under Section 5." Id., 72 F.Supp. at page 832. This decision was affirmed by the Circuit Court of Appeals for the Second Circuit in a per curiam opinion. Conley v. San Carlo Opera Co., 2 Cir., 163 F.2d 310.

In cases falling in the second category above referred to it has been held that the stay provisions of Section 3 of the Act are not limited to arbitration provisions validated by Section 2; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, affirmed, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; In re Pahlberg Petition, 2 Cir., 131 F.2d 968; Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 149 A.L.R. 271; Agostini

Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854; but a contrary view has been taken by some courts; Zip Mfg. Co. v. Pep Mfg. Co., D.C.Del., 44 F.2d 184; In re Cold Metal Process Co., supra; see also Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876. In all of the cases referred to, however, which hold that Section 3 is not limited by Section 2, it has been recognized that a distinction must be made between Sections 3 and 4, and that Section 4 is limited by Section 2. Thus in Shanferoke Coal & Supply Corp. v. Westchester Service Corp., supra, 2 Cir., 70 F.2d 297 the Court, in holding that Section 3 should not be given a limited construction, said:

"We can see no reason for a limited construction, and conclude that section 3 authorizes a stay even though the arbitration must take place beyond the jurisdiction of the court. In The Volsinio, supra, (D.C.) 32 F.2d 357, the actual ruling was that although this was true, the section was inapplicable, unless the contract was itself 'maritime,' or 'involved commerce,' as defined by section 1 of the act (9 U.S.C.A. § 1). We are not clear that this is true; section 2 defines those contracts which it makes 'valid, irrevocable and enforceable,' and no doubt such alone are within section 4. Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004. But it does not follow that section 3 is so circumscribed; * * *." 70 F.2d at page 298.

The opinion of the court in this case was cited with approval in Donahue v. Susquehanna Collieries Co. and Agostini Bros. Bldg. Corp. v. United States, both supra.

In Kulukundis Shipping Co. v. Amtorg Trading Corporation, 2 Cir., 126 F.2d 978, the Court recognized a distinction between a stay provision in a statute and a provision for specific performance; it was said: "There is a well recognized distinction between such a stay and specific performance: The first merely arrests further action by the court itself in the suit until something outside the suit has occurred; but the court does not order that it shall be done. The second, through the exercise of discretionary equity powers, affirmatively orders that someone do (or refrain from

doing) some act outside the suit." 126 F.2d at page 987. In Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 452–453, 55 S.Ct. 313, 79 L. Ed. 583, the Supreme Court stated that the power of a court to order a stay of proceedings until arbitration is had does not necessarily depend upon its power to order affirmative specific performance of the arbitration clause in the first instance.

We have not found any cases holding that Section 4 is applicable to an arbitration agreement which is not validated by Section 2, and, as heretofore stated, we are satisfied that the two sections must be read together, and that Section 4 is limited by Section 2. The contract in the instant case is a local building contract and does not evidence any transaction involving interstate or foreign commerce; hence, the arbitration clause contained therein is not validated or made irrevocable and enforceable by Section 2 of the Act, Tejas Development Co. v. McGough Bros., 5 Cir., 165 F.2d 276, 278; and we hold that Section 4 of the Act is inapplicable.

Passing to a consideration of the basic questions in the case, that is to say whether or not the plaintiff is entitled to a declaratory judgment to the effect that the instant arbitration clause is valid and irrevocable, and whether or not it is entitled to specific performance of said clause, we will take up these questions in inverse order and on that of specific performance we assume, for purposes of discussion, that the clause is valid, in that it does not offend public policy, and that it is irrevocable in the sense that neither party may, without excuse, refuse to arbitrate without becoming subject to some legal sanction.

It does not follow from these assumptions, however, that the plaintiff is entitled to affirmative specific performance of the arbitration clause. It is well settled that in the absence of a statute an executory agreement to arbitrate will not be specifically enforced. 3 Am.Jur., Arbitration and Award, Section 74, page 906; American Law Institute, Restatement of the Law, Contracts, Vol. 2, Section 550; Williston On Contracts, Rev.Ed., Section 1421; Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582; see also annotation in 135 A.L.R., pp. 79 et seq. The rule appears to be based in part upon inherent difficulties in granting the relief and in part upon considerations of public policy. Williston, op.cit., supra.[1] It has been said that the law does not favor unwilling arbitrations. Tejas Development Co. v. McGough Bros., supra, 165 F.2d at page 280.

In Red Cross Line v. Atlantic Fruit Co., supra, the Supreme Court took the view that while at common law executory agreements to arbitrate are valid and a breach of such an agreement will support an action for damages, and that where the agreement is made a condition, it will sustain a plea in bar to a suit based upon the principal contract, nevertheless such agreements are not specifically enforceable.

In Section 550 of the Restatement it is said that "* * * a bargain to arbitrate either an existing or a possible future dispute is not illegal, unless the agreed terms of arbitration are unfair, but will not be specifically enforced, and only nominal damages are recoverable for its breach. Nor is any bargain to arbitrate a bar to an action on the claim to which the bargain relates." In the comment following this statement of the rule it is pointed out that an agreement to arbitrate is practically unenforceable unless made a condition "since the bargain gives rise to neither a right to substantial damages nor to a right to specific performance." Restatement, Contracts, Section 550, comment "a". It is further said: "The authority of the arbitrator is revocable by either party at any time before an award is made, and though the revocation is a violation of the agreement, the injured party is without substantial redress. If, however, the bargain to arbitrate is carried out and an award made, the award is binding." Ibid.

---

1. For a full discussion of the judicial attitude toward executory agreements to arbitrate see Kulukundis Shipping Co. v. Amtorg Trading Corp., supra, 126 F.2d at pages 982–984.

While, as pointed out by the plaintiff, the judicial attitude toward executory agreements to arbitrate has been criticized in a number of cases,[2] said rule does not appear to have been discarded by the Courts. What changes that have been made have been effected by statute.[3] Although the plaintiff urges that the rule denying affirmative specific performance of such agreements is outmoded and should be discarded, we have not been cited to any case which holds that, in the absence of a statute, an action will lie for the specific performance of such an agreement; and we have found no such case. In this connection, we might add that in none of the cases cited by the plaintiff on this point was the question of affirmative specific performance involved.

██ From our consideration of the authorities heretofore cited, we are satisfied that the rule that an executory agreement to arbitrate will not be specifically enforced in the absence of a statute so providing is still the law. In this connection it should be pointed out that the mere fact that a contract may be valid and irrevocable does not necessarily mean that it will be specifically enforced. There are other types of contracts, such as those for personal services or for the sale of ordinary personal property, which are unquestionably valid and irrevocable, but which will not be specifically enforced.

While it does not appear that the Supreme Court of Arkansas has ever been called upon to squarely decide the question, there is nothing in the comparatively few Arkansas cases dealing with executory agreements to arbitrate which suggests that such agreements can be specifically enforced in the absence of a statute; and we have no reason to believe that if called upon to decide the question that court would announce a rule different from that generally prevailing elsewhere. In this connection it may be said that it appears to us from a study of the Arkansas cases that the Arkansas view generally as to such agreements is a conservative and orthodox one, for instance: A general executory agreement to refer all questions in dispute, including questions of ultimate liability, is void as contrary to public policy, but a limited agreement to refer questions of fact only is valid. Soudan Planting Co. v. Stevenson, 94 Ark. 599, 128 S.W. 574; Firemen's Insurance Co. v. Davis, 130 Ark. 576, 198 S.W. 127. Where a valid agreement to arbitrate is merely an independent or collateral covenant contained in the principal contract, it

2. See for example The Atlanten, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586, affirming Aktieselskabet Korn-og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten, 2 Cir., 250 F. 935; United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co., D.C.N.Y., 222 F. 1006; see also the concluding paragraph of the Court's opinion in Red Cross Line v. Atlantic Fruit Co., supra. The first three of these decisions did not involve any question of affirmative specific performance; the Red Cross Line case was a suit for specific performance brought under the New York arbitration statute, which was passed in 1920. Moreover, it should be noted that all of these cases were admiralty cases, and in the Red Cross Line case the Court had occasion to point out that reference of maritime disputes to arbitration had "long been common practice", that insertion of provisions for arbitration in charter parties had been practiced at least as early as the 18th century, and that the only reason that such agreements were not spe-

cifically enforced in admiralty was that the courts of admiralty lacked power to grant equitable relief. 264 U.S. at pages 122–123, 44 S.Ct. at page 276.

3. There is a special note following Section 550 of the Restatement to the effect that in England and New York statutes have been passed which virtually enforce specifically executory contracts to arbitrate, and that Congress has passed a "somewhat similar Act applicable to interstate and foreign commerce and to admiralty." It is further pointed out, however, that such statutes have not as yet been generally enacted in the United States although many states have statutes of "less sweeping character" relating to arbitration. The only Arkansas statute relating to arbitration, Ark.Stats. 34–501 et seq., was originally enacted as part of the old Civil Code of Arkansas, and simply provides a procedure whereby a voluntary agreement to arbitrate an existing dispute can be made a rule of court.

is not a bar to an action on the contract, but its breach forms the basis for an action for damages; if the agreement for arbitration, however, is, either expressly or by necessary implication, made a condition precedent to suit, then no action may be maintained on the contract without prior arbitration, unless such arbitration is waived or prevented by the other party. Soudan Planting Co. v. Stevenson, supra.[4] As to whether or not an executory agreement to arbitrate is revocable under Arkansas law, it appears from the last Arkansas decision which we have found bearing upon the subject that if the agreement is supported by no consideration other than the mutual agreement of the parties to arbitrate, it is revocable at the will of either party at any time before an actual award is made, but if there is independent consideration for the agreement, other than the mutual agreement of the parties to arbitrate, then it is not revocable at the will of one of the parties. Insurance Co. of North America v. Kempner, 132 Ark. 215, 200 S.W. 986.[5] Where the agreement is executed and an award made, the parties are bound thereby, and the award may be enforced by suit. Alexander v. Fletcher, 206 Ark. 906, 175 S.W.2d 196, and cases there cited.

As indicated, we see nothing in the Arkansas cases indicating that the view of the Supreme Court of Arkansas with reference to executory agreements to arbitrate differs materially from the "general law" on the subject, which has been discussed, and we conclude that under Arkansas law

such an agreement cannot be specifically enforced.

Taking up now the plaintiff's claim for a declaratory judgment, we again assume, without deciding, that the clause in question is valid and irrevocable. This does not necessarily mean, however, that the plaintiff is entitled to a declaratory judgment to that effect. It is well settled that the granting or withholding of declaratory relief rests within the sound judicial discretion of the Court; a declaratory judgment should not be granted if to do so would entail a "piecemeal litigation of the matters in controversy", nor unless the Court can by such a judgment dispose of the controversy between the parties. 3. Barron & Holtzoff, "Federal Practice & Procedure", Section 1265; 3 Moore's "Federal Practice", 1st Ed., p. 3203. In Redlands Foothill Groves v. Jacobs, D.C.Cal., 30 F.Supp. 995, 1008, Judge Yankwich said that a declaratory judgment should not be entered "unless it will serve a useful, practical purpose", and that the discretionary power of the court should not be exercised "when no beneficial result could follow."

Since we have concluded that the plaintiff is not entitled to specific performance of the arbitration clause in the contract, a declaratory judgment that said clause is valid and irrevocable would amount to no more than a declaration that the plaintiff is entitled to nominal damages, or, at most, that if the defendant should at some later date sue the plaintiff for breach of the

4. In Soudan Planting Co. v. Stevenson, supra, the Court cited Hamilton v. Home Insurance Co., 137 U.S. 370, 385, 11 S. Ct. 133, 34 L.Ed. 708, in which case there was cited Hamilton v. Liverpool, London & Globe Insurance Co., 136 U.S. 242, 10 S.Ct. 945, 34 L.Ed. 419, both of which are leading cases for the proposition that limited agreements for arbitration are valid, and that when made conditions precedent to suit, they may be pleaded in bar, but not if they are merely collateral, in which case the only remedy for breach is an action for damages.

5. In that case it was said: "The agreement for appraisement in the present case, treating it, as we must, as entire-

ly disconnected from the void provision in the policies, amounted to no more nor less than a common-law submission to arbitration of a disputed question of fact, and the rule is almost universally recognized by the authorities that such an agreement is revocable, at any time before the award, at the will of either party. See note to Williams v. Branning Mfg. Co., 47 L.R.A.,N.S., 337; 2 Ruling Case Law, p. 367. The only exception to the rule is that when the submission is founded on an independent consideration other than the mutual agreement to arbitrate, it is not revocable at the will of one of the parties." 132 Ark. at page 218, 200 S.W. at page 986.

principal contract without resorting to arbitration, the latter could plead the arbitration clause; and there is nothing in the record before us to indicate that the defendant is presently contemplating any such action against the plaintiff. Moreover, the declaration sought by the plaintiff would not touch the basic controversy between the parties, which is as to whether or not the plaintiff is entitled to additional compensation for rock excavation.

Under such circumstances we feel that our discretion should be exercised so as to refuse plaintiff's prayer for declaratory relief. Of course, it is still open to the plaintiff to sue the defendant for the additional compensation which it claims to be due it since the defendant's refusal to arbitrate excuses the plaintiff from its obligation to do so. Soudan Planting Co. v. Stevenson, supra.

Let the plaintiff's motion for judgment on the pleadings be denied, and the defendant's cross motion for the same relief be sustained, and judgment be entered for the defendant.